# REEVES *v.* LOW.

APPELLATE PRACTICE; DISMISSAL OF APPEAL; BILLS OF EXCEPTIONS; EVIDENCE; EJECTMENT, ADVERSE POSSESSION.

1. An appeal will not be dismissed on a motion in this court based upon the fact that the clerk of the lower court failed to enter the bills of exceptions set forth in the record on the minutes of his court, where the clerk certifies to the record and that the bills of exceptions are a part of the record duly filed in that court.

2. Nor will an appeal be dismissed upon the ground that accompanying bills of exceptions were not settled before the close of the trial term, but were signed three months after its adjournment, where the record shows an extension of the trial term for the purpose of hearing a motion for a new trial, the preparation and delivery of the bills of exceptions to the trial justice before the end of that term, and the fact that the bills of exceptions were signed on the day the motion was overruled, three months after the adjournment of the trial term.

3. Where in an ejectment suit to recover specific parcels of land, the plaintiffs trace title through a will containing a general devise of the testator's property to a devisee under whom plaintiffs' claim, and the will is not dated and there is nothing in the record of the probate proceedings, or in the testimony, to show its date, or whether the property in controversy had been acquired before or after its execution, it is error to admit the will or a record of it in evidence.

4. And in such a case, the general presumption that a person intends to die testate of all of his property, and the fact that the heirs of the testator never questioned the right of the testator to take the property in controversy, notwithstanding the lapse of 30 years from the date the will went into effect, are not sufficient grounds upon which to base a legal inference that the title of the property was vested in the testator when he made the will.

5. "Did W. F. state to you that he claimed to own this ground including the lots in controversy?" is a leading question, and its exclusion by a trial court is not error.

6. Where in an ejectment suit a witness after testifying that she has never heard the lots in controversy spoken of as belonging to any one, is asked " who was understood to be the owner of the property in the neighborhood," an objection to the last question is properly sustained by the trial court; especially where other witnesses subsequently testify on behalf of the party objecting as to the understanding in the neighborhood as to the ownership of the property.

7. In an ejectment suit, where the defence is an outstanding title by adverse possession in the defendant or in third parties, it is error for the trial court to instruct the jury that the defendant must show either that he holds the possession of the property for the owners of such outstanding title, or, if he claims in his own right, that the owners of such outstanding title are still asserting their claim.

8. And in such a case, where the testimony is not conclusive that the heirs of the person who originally went into adverse possession of the property, went into possession on his death, or that defendant did not claim in his own right, such erroneous instructions will not be considered mere abstraction and therefore not reversible error.

9. Where in an ejectment suit in which the defence is adverse possession, the court in its charge states that "the claims of ownership or claim of title must be ascertained from all the circumstances of the case;" the modification by the court of one of defendant's prayers relating to the nature of the claim of title to be proved by striking out the words "and such claim may be gathered from his acts in improving and occupying the land," will not constitute reversible error.

No. 461.  Submitted January 8, 1895.  Decided February 11, 1896.

HEARING on an appeal by the defendant from a judgment on verdict in an action of ejectment. *Reversed.*

The COURT in its opinion stated the case as follows:

This is a suit in ejectment instituted in the Supreme Court of the District of Columbia by the appellee, Robert Low, as plaintiff, to recover the possession of three lots of ground in the city of Washington, designated as lot 1, in square No. 604, and lots 5 and 6, in square No. 605, from which he alleged in his declaration that he had been unlawfully ousted by the appellant on March 24, 1886, the suit having been instituted on November 10, 1891. A second count of the declaration claimed mesne profits; but this seems to have passed out of the case, or to have been abandoned; for there is no verdict upon it, and it does not enter into the judgment.

At the trial the plaintiff proved title through the United States, through divers mesne conveyances, to one William

B. Richmond, to whom it was conveyed by deed dated October 4, 1858. He then offered in evidence an exemplified copy of the will of William B. Richmond, from the records of the county court of Shelby County, in the State of Tennessee, from which it appeared that the will, although without date, had been attested by three subscribing witnesses and duly proved by their oaths, and had been admitted to probate in said county court on July 3, 1865. On behalf of the defendant, objection was made to the admission of this will in evidence, on the ground that it bore no date, and that there was nothing to indicate whether the property in controversy had been acquired after or before its execution. But the will was admitted over the objection, and the defendant excepted. It was not questioned that the will was duly executed to convey real estate.

The plaintiff then adduced proof to show title to the lots by divers mesne conveyances from the grantee or devisee in Richmond's will to himself, the last conveyance in the chain of title being one from Mary J. Snowden to him. He then testified orally that he had bought the lots without seeing them, for $1,300; that, when he went to see them after his purchase, he found some one in possession of part of them; that on September 13, 1891, when he went there again, he found the defendant in possession of the lots, having part of them under cultivation—although, as he did not know the boundaries of the lots, he could not tell what parts were so held; that he took the defendant's name down in a memorandum book; and that the defendant, upon being informed that he (the plaintiff) owned the property, violently assaulted him and drove him from the premises. A plat of the two squares were also given in evidence.

The defendant had pleaded the general issue. He claimed a title in himself or others by adverse possession.

His testimony went to show that, in the year 1851, one William Fraser came from the State of Virginia with his wife, Martha E. Fraser, and occupied and cultivated the

lots of ground in controversy, with other adjacent lots,
which he inclosed with a fence running along the lines of
Q, First and V streets, his boundary on the west side being
the James Creek Canal.    The Frasers went away, and re-
turned again in 1854.    They went to reside in a house on
an adjacent square, 663, and William Fraser renewed his
fence, and again enclosed and cultivated the land in con-
troversy with other lots.    They continued to reside in the
house mentioned, until 1860, when William Fraser bought
a farm in Virginia, to which he removed, and rented the
property in controversy, with the other inclosed property,
to one Robert Howerson for $250 a year.    While he was
in Virginia, Fraser appointed one James C. Kelly to col-
lect the rent for him.

About the year 1864, a railroad was run across the lots
in controversy by officers of the Government of the United
States to convey grain to a warehouse on Seventh street,
west; whereupon Howerson gave up the land, and Kelly
took possession as the agent of Fraser.    After the war, the
railroad was taken away, and Kelly rebuilt the fences, and
cultivated the land until 1875, when Fraser returned to
Washington, assumed possession of the property himself,
and continued to occupy and cultivate it until his death in
1883.

It appears from the testimony that the land was divided
into fields, two or more; and that the adjoining streets and
avenues, as well as the lots, were included within the in-
closure.    It was also testified that the ground was gener-
ally known as Fraser's field, or Fraser's farm; and that it
was generally understood in the neighborhood that the
property belonged to William Fraser.

On the death of Fraser, his widow, Martha E. Fraser,
retained possession of the property.    She had six children,
four under age and living at home.    She had also two
nephews, one Stephen Wright and the defendant James C.
Reeves, who seem to have been brothers or half-brothers,
and of whom James C. Reeves married one of William

Fraser's daughters. Mrs. Fraser placed her nephew Stephen Wright in possession of the property for two years in subordination to herself; and after that she let the defendant James C. Reeves into the possession. Neither of them ever paid her any rent; and there was no agreement for any.

This was the substance of the testimony on behalf of the defendant; and it does not seem to have been controverted. In the course of it, Mrs. Martha E. Fraser, the widow of William Fraser, and one of the principal witnesses for the defence, was asked by counsel for the defendant the question: " Did William Fraser state to you that he claimed to own this ground, including the lots in controversy ? " To this question objection was interposed on behalf of the plaintiff on the ground that it was leading and inadmissible ; and the court sustained the objection, and excluded the question. To this ruling exception was duly taken.

Mrs. James C. Kelly, a witness for the defence, was asked by counsel for the defendant the question: " Who was understood to be the owner of the property in the neighborhood ? " And this, also, upon objection, was excluded as inadmissible ; and exception was reserved by the defendant.

So far as appears from the record these were the only exceptions to rulings in regard to the testimony, except that, at the conclusion of the oral testimony, the defendant offered in evidence a deed. to himself from the widow and heirs of William Fraser executed subsequently to the institution of the suit, and which was objected to and excluded, the defendant duly reserving an exception to the ruling..

There was no testimony in rebuttal, and the plaintiff requested no instructions.

The defendant requested three instructions to the jury, which the court refused to give without modification. These instructions were as follows :

1. "If the jury find from the evidence that William Fraser, either personally or through his tenants, was in actual, open, notorious, exclusive, and continuous possession of the land in controversy in this case, claiming to be the owner thereof, for an uninterrupted period of twenty years prior to the bringing of this suit, they shall find their verdict for the defendant.

2. "If the jury believe that for any continuous period of twenty years before this suit was brought the ground in controversy was inclosed by a substantial fence, and that thenceforward a part of said period William Fraser was personally in the actual, open, notorious, and exclusive possession thereof, cultivating it and claiming it as his own, and that for the residue of said period of twenty years persons renting from and claiming the said land under the the said Fraser were in the like actual, open, notorious, and exclusive possession thereof, then said Fraser acquired thereby as perfect and complete a legal title to said land as if he had received a fee-simple deed for it from the last record owner, and their verdict should be for the defendant.

3. "When the jury are told that William Fraser could not acquire right to the ground by possession of it for the required twenty years unless that possession was accompanied by a claim of title, they are not to understand that a claim of title under any deed or contract or through or from any specified or particular former owner or other person is required. If he claimed that the ground was his, or that he was the owner of it, or that it belonged to him, this was a sufficient claim of title, and such claim may be gathered from his acts in improving and occupying it."

The qualification, without which the court refused to give the first and second of these instructions, was this : " Provided you find that, at the time this action was brought, the defendant was in possession, claiming to hold the same for the heirs at law of William Fraser, or if he was claiming it in his own independent right, that the heirs of William Fraser were asserting such outstanding title acquired by William Fraser by adverse possession."

And the qualification of the third instruction, without which the court refused to give it, consisted in the elimination of these last words in it—" and such claim may be gathered from his acts in improving and occupying it."

With these modifications the instructions seem to have been given.    But to the refusal of the court to give the instructions without modification, and to the instructions as thus given, the defendant duly excepted.

The court then charged the jury of its own motion, explaining to them the elements required to constitute title by adverse possession.    He instructed them that the claim of William Fraser to be available must be a claim superior to all the world, that a claim of as good a right as any one else or of a right superior to all but that of the record owner would not suffice ; that a claim such as was made to the streets within the inclosure would be insufficient ; that if the claim of Fraser was in subordination to that of the record owner, the plaintiff was entitled to a verdict; that the claim must be subsisting and substantial, and that it must appear, either that the defendant was claiming for the heirs at law of William Fraser, or that, if he was claiming independently in his own right, the heirs at law of William Fraser were asserting their own outstanding title in good faith.

To this general charge no exception was taken.    Thereupon the case went to the jury, who returned a verdict for the plaintiff for the possession of the property ; and from the judgment thereon the defendant has appealed to this court.

*Mr. J. J. Darlington* and *Mr. W. H. Sholes* for the appellant :

1. In ejectment, the burden of proof is on the plaintiff as to every fact necessary to establish title in himself.    At the date of the probate of the will of Richmond, only lands of which a testator was seized at the date of the execution

of the will could pass under it. It was essential to the validity of the appellee's title that the will should have been executed subsequent to October 2, 1858, the date of the deed to him ; yet the will was permitted to go to the jury without any evidence whatever on this important point.

2. Evidence of general reputation as to ownership is admissible in support of a claim of title by adverse possession. *Sparrow* v. *Hover*, 44 Mich. 63·; *Land Co.* v. *Dawson*, 151 U. S. 603 ; *Holtzman* v. *Douglas*, 5 App. D. C. 397.

3.· A defendant in ejectment may show a paramount outstanding title for the same land in a stranger, to defeat the plaintiff. *Doswell* v. *De Lanzo*, 20 How. 29 ; *Love* v. *Simms' Lessee*, 9 Wheat. 515 ; *Smith* v. *McCann*, 24 How. 398 ; *Hall* v. *Gittings*, 2 H. & J. 125 ; *Hammond's Lessee* v. *Inloes*, 4 Md. 173 ; *Lannay's Lessee* v. *Wilson*, 30 Md. 545.

4. After adverse possession has ripened into a fee-simple title it is as valid, effective and durable as title acquired in any other way. No authority can be found for the proposition that proof of such a title offered in an ejectment suit, whatever be the purpose of the offer, fails of effect without evidence of actual assertion of it by the party entitled under it at the time of the action brought. *Harpending* v. *Dutch Church*, 16 Pet. 455 ; *Leffingwall* v. *Warren*, 2 Black, 599, 605 ;· *Dickerson* v. *Colegrove*, 100 U. S. 582 ; *Todd* v. *Kauffman*, 19 D. C. 304.

5. The refusal to instruct the jury that claim of title by Fraser might be gathered from his acts · in improving and cultivating the land for 30 years before action brought, constitutes reversible error. That such acts are evidence of an intention to claim title, see Sedgwick & Wait on Title to Land, sec. 749, cited in *Neal* v. *Lee*, 19 D. C. 19 ; *Grube* · v. *Walls*, 134 Iowa, 148 ; *Holtzman* v. *Douglas*, 5 App. D. C. 397.

*Mr. W. L. Cole* for the appellee :

1. The presumption is in favor of the will passing title to the devisee, and in order to defeat it the burden was on appellant to show that the property was acquired subsequently to the execution of the will. The presumption under such circumstances is that the testator died testate as to all his estate.

2. The proviso added by the court to the appellant's first and second instructions was the statement of an abstract proposition of law, having no relevancy to any fact in the case, and under the circumstances does not constitute reversible error. *Philpot* v. *Gunninger*, 14 Wall. 570; *Railroad Co.* v. *Ross*, 112 U. S. 377; *Thompson* v. *Pickell*, 24 How. 233; *Mayor* v. *Norman*, 4 Md. 352.

Mr. Justice MORRIS delivered the opinion of the Court:

The appellee has filed with his brief in this case a motion to strike from the record the bills of exceptions contained therein on three grounds: 1st. Because no note or order was ever entered on the minutes of the Supreme Court of the District of Columbia making these bills of exception a part of the record, or showing that they had ever been settled or filed; 2d. Because the bills of exceptions were not settled before the close of the term at which the case was tried; 3d. Because the bills appear to have been signed three months after the adjournment of that term.

But this motion is wholly untenable. The clerk of the Supreme Court of the District of Columbia certifies to the record before us, and that the bills of exceptions are a part of that record duly filed in that court; and if, as the appellee by his motion implies, he did not spread them upon the minutes of the proceedings of his court, that is not a matter with which we can deal. Certainly the appellant should not be prejudiced thereby. Nor is the position well taken that the bills of exceptions were not settled and signed until after the close of the term at which the trial

was had. It is admitted in a supplemental record filed in the case, that the bills of exceptions were prepared, agreed to by counsel, and delivered to the justice who tried the cause before the end of the trial term ; that the term was continued and extended for the purpose of hearing a motion for a new trial in the case ; that this motion was not disposed of until April 1, 1895, three months after the adjournment of the trial term, when it was overruled, and judgment directed to be entered on the verdict. And the bills of exceptions purport to have been signed on the same day (April 1, 1895). There is, therefore, no ground whatever for the motion to strike out the bills of exceptions from the record ; and consequently that motion must be overruled.

There are four assignments of error on behalf of the appellant based upon the seven bills of exceptions taken by him in the case. These assignments are as follows :

1st. In the admission of the will of William B. Richmond, without evidence as to the date of its execution.

2d. In the refusal of the court to admit two questions bearing upon the claim of title to the property by William Fraser.

3d. In the instructions given to the jury by the modification of the first and second instructions requested by the defendant, to the effect that the plaintiff might recover notwithstanding the title by adverse possession in William Fraser, unless the appellant claimed under him or that title was then being asserted.

4th. In the refusal of the trial court to instruct the jury, as prayed by the third instruction asked, that William Fraser's claim of title might be gathered from his acts in improving and occupying the land.

1. With reference to the first assignment of error based upon the admission in evidence of the will of William B. Richmond as a link in the plaintiff's chain of title, there seems to be raised a question of some novelty in our jurisprudence. It is nothing new that the date of the execu-

tion of an instrument of writing should be shown by extraneous testimony when the instrument itself bears no date, or to show the true date when the instrument states an arbitrary or erroneous date. But we are now asked to infer a date, or the execution of an instrument of writing at a certain period of time, when no date is set forth in the instrument, and there is absolutely no testimony whatever of any kind to show the time of its execution, other than the fact that it must have been executed before July 3, 1865, the day when it was admitted to probate, the document being a will.

Counsel have pointed us to no authorities on the subject, and we have failed to find any in the books. We must therefore be guided by what would seem to be the general rule of practice.

In ejectment, as in all other cases, it is incumbent on the plaintiff to prove his case ; not on the defendant in the first instance to disprove it. If any link in the plaintiff's chain of evidence is broken, the whole case must fail. There are many facts, it is true, that may be inferred from circumstances. Inference is a necessity in the law ; the whole theory of circumstantial evidence is based upon the rule that from certain premises we may always infer certain consequences, because reason and human experience have so taught us. But substantial facts may not be inferred when there are no circumstances shown upon which to base an inference.

It is essential to the plaintiff's case in the present instance that he should show that the title to the property in controversy, which was in William B. Richmond, passed from Richmond to one Maria Stacker, from whom the plaintiff deduces his title. For that purpose he has introduced in evidence the record of a will purporting to have been made by William B. Richmond and to have been admitted to probate in the State of Tennessee, where he may be supposed to have resided at the time of his death. But the will, which only devises the testator's estate generally

to Maria Stacker, without any specification of the property in controversy or other property, does not itself disclose the date of its execution. It is without date; and neither the record of the probate, as it would seem, nor any other fact or circumstance appearing on the record before us, tends in the remotest degree to show the time of its execution. Unless it is made to appear that such execution was subsequent to October 2, 1858, the date of the conveyance to him of the property in controversy, the will was ineffectual to convey this property to Maria Stacker and the plaintiff's case fails. The time of the execution, therefore, is here no less important to the plaintiff than the fact itself of execution. And yet we are asked to infer that the will was executed subsequently to October 2, 1858, without any proof whatever of any circumstances upon which to base such an inference.

The only reason adduced by the appellee as a justification for the inference is the presumption that the maker of the will intended to die testate as to all his estate, and the fact that the heirs of Richmond have not questioned the right of the devisee to take this property under the will, notwithstanding the lapse of thirty years from the time at which the will went into effect. But this latter fact, if fact it be, is again only an inference, for which there is no sufficient foundation in this record. And the presumption that a person intended to die testate of all his estate is only a presumption to aid in the construction of a will, when its terms are doubtful. Jarman on Wills, chap. 25, sec. 7. It cannot be used to supply proof of essential acts concerning the execution of the will. As well might it be inferred in ordinary cases that, when a paper-writing purporting to be a will is produced and appears to have had the names of the proper number of witnesses subscribed to the attestation clause, the due execution of the will may be inferred therefrom, and proof of such execution be dispensed with.

We are compelled to conclude that the will of William B. Richmond, introduced into this case, without any evidence

of the time of its execution, was insufficient proof of the transfer of the title to the property in controversy, and that the objection to its introduction was well founded. It may be that in a new trial such evidence will be forthcoming.

2. The second assignment of error we must regard as untenable. One of the questions propounded by the defendant to his witnesses, which was excluded specifically on the ground that it was a leading question, was clearly of that character, and for that reason was very properly excluded. The other question was this : " Who was understood to be the owner of the property in the neighborhood?" As the witness to whom the question was put had previously testified that " she had never heard the lots in controversy spoken of as belonging to any one," it is difficult to see how she could testify as to any understanding in the neighborhood about the ownership of the property, or that the exclusion of the question, so far as this witness was concerned, did any harm to the defendant. Moreover, it appears that the same question was afterwards, without objection, put to other witnesses on behalf of the defendant, who were cognizant of the understanding in the neighborhood about the ownership, and was answered by them to the entire satisfaction of the defendant, to the effect that " it was the general reputation in the neighborhood that the property belonged to William Fraser." According to well settled rules, therefore, there was here no error for which a reversal of judgment should be had. *Lucas v. Brooks,* 18 Wallace, 436; *Hornbuckle v. Stafford,* 111 U. S. 389.

3. The third assignment of error is founded on the qualification added to the instructions requested by the defendant with regard to the law of adverse possession.

This qualification is to the effect that, in order to defeat a plaintiff in ejectment claiming the record title to the property in controversy by the show of an outstanding title by adverse possession in some one other than the plaintiff or defendant, the defendant must not only show such outstanding adverse title by possession, but also either that the de-

fendant holds the possession of the property for the holder of such adverse title, or that, if he claims in his own independent right, the holder of the adverse title was still asserting his claim.

It does not seem to us that this qualification of the law is supported by the authorities. It is beyond question that a plaintiff in ejectment may be defeated by proof of an outstanding title by adverse possession in another person, who is a total stranger to the suit, and between whom and the defendant there is no privity. *Smith* v. *McCann*, 24 How. 398 ; *Doswell* v. *De Lanzo*, 20 How. 29 ; *Love* v. *Simms*, 9 Wheat. 575 ; *Harpending* v. *Dutch Church*, 16 Pet. 455 ; *Leffingwell* v. *Warren*, 2 Black, 579 ; *Dickerson* v. *Colgrove*, 100 U. S. 582 ; *Hall* v. *Gittings*, 2 H. & J. 125 ; *Hammond* v. *Inloes*, 4 Md. 173 ; *Lannay* v. *Wilson*, 30 Md. 545.

This seems to be conceded by the appellee in his brief ; at all events, it is not controverted by him, and could not successfully be controverted. And if this be so, the defendant ought not to be required to connect himself and his possession with such outstanding adverse title, as one alternative of the qualification would require him to do. That part of the qualification, at all events, is error. The other alternative, which would require the defendant, if he claimed in his own independent right to show that the holder of the outstanding adverse title was still asserting it—in other words, that he had not abandoned it, we must regard as equally erroneous. It is not necessary that a defendant in ejectment should show in what right he claims, or that he should show any right whatever in himself. This is sufficiently shown by the cases already cited. And it follows as a necessary consequence from this, that if he is not required to show any claim at all in himself he is not required to fortify any such claim by proof of the continued assertion of the outstanding adverse title. Nor is it apparent how abandonment by the owner of the title by adverse possession, if it were shown, could benefit the plaintiff in ejectment, inasmuch as " adverse possession for twenty years not only

bars the remedy, but extinguishes the right, and vests a perfect title in the adverse holder, a title as undoubted as if he produced a deed in fee from the true owner." *Leffingwell* v. *Warren*, 2 Black, 599 ; *Harpending* v. *Dutch Church*, 16 Pet. 455.

These principles are not denied by the appellee in the present case ; nor is it sought by him to support the qualified instructions of which the appellant here complains. He seeks to show that, in view of the circumstances of the present case, they are mere abstract propositions of law, which could not have injured the defendant. The argument is that the testimony was to the effect that William Fraser and his heirs were continuously in the possession of the property from the year 1851 to the time of the institution of the suit, and that there was no evidence of an abandonment of it by them at any time ; and that therefore the instructions were mere abstractions, which, even if erroneous, should not suffice to reverse the judgment. We do not so understand the instructions. The evidence is not conclusive that the heirs of William Fraser went into possession upon his death, or that the defendant did not claim in his own right, and the instructions did not have the effect of mere abstractions ; for the jury might well have inferred from them that there was a burden of proof upon the defendant with the requirements of which he had failed to comply.

4. The fourth assignment is based upon the refusal of the court below to give the third instruction requested by the defendant with reference to the question of claim of title, unless the words at the conclusion of the instruction were stricken out—that " such claim may be gathered from his acts in improving and occupying the land."

With reference to this, it is sufficient here to say that, whether there was error or not in the action of the court, which it seems to be unnecessary for us here to determine, the subject was fully covered in the general charge of the court, to which there was no exception. There the court

said, " that the claim of ownership or claim of title must be ascertained from all circumstances in evidence ;" and that statement of the law would seem to be broad enough to cover the instruction requested by the defendant, and not to be in any manner prejudicial to the defendant.

For the errors that have been here pointed out, the judgment of the court below must be *reversed, with costs ; and the cause must be remanded to that court, with directions to award a new trial. And it is so ordered.*