## GUNNING v. COOLEY. *

Court of Appeals of District of Columbia.
Submitted April 10, 1928. Decided
January 7, 1929.

Rehearing Denied January 19, 1929.

No. 4682.

Robb, Associate Justice, dissenting.

Benj. S. Minor, H. P. Gatley, and A. P. Drury, all of Washington, D. C., for appellant.

Alvin L. Newmyer, Milton W. King, and Ralph A. Cusick, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB. and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal from a judgment recovered by the appellee, as plaintiff below, for damages for personal injuries alleged to have been sustained by her in consequence of certain negligent medical treatment administered to her by the defendant as a physician.

It is conceded that at the time in question the defendant was a physician in general practice, and that he treated plaintiff as a patient. It is claimed by plaintiff that as part of the treatment defendant undertook to inject a drop or two of sweet oil into each of her ears, but that, because of his negligence and lack of skill, he actually injected into her ears a solution which was not sweet oil, but was a harmful, dangerous and destructive solution, which injured the drums of her ears, in consequence whereof she suffered great pain, and her ears were seriously and permanently injured, and she was made permanently deaf in her right ear, to her great damage. Defendant claims that he actually placed only a drop or two of pure mineral oil in the external ear of plaintiff; that this was harmless, and caused no injury to her ears, and was proper professional treatment. The jury rendered a verdict against defendant, and judgment was entered accordingly; whereupon this appeal was brought.

At the close of all the evidence the defendant moved for a directed verdict upon the ground that plaintiff had failed to establish her case. The court overruled the motion, and that ruling is assigned as error. This assignment necessitates a brief reference to the evidence.

The evidence on behalf of the plaintiff is to the effect that on October 21, 1922, she first consulted the defendant for a trouble in her throat and received treatment therefor; that a few days later she again called upon defendant, who advised her that mouthbreathing had caused her throat trouble, and there was something wrong with her nose, and that it needed treatment, which he accordingly gave her; that soon afterwards she again went to defendant's office and told him she had a slight cold and felt ''wax or something'' in her right ear; that, after an examination, defendant said he would drop a little mineral oil in her ear; that there were twelve or thirteen bottles of medicine on defendant's cabinet, all alike in appearance, and but a single dropper for use with all of them; that defendant by means of this dropper then injected some fluid into her right ear, whereupon she instantly became dizzy and suffered horrible pain in her ear, and heard roaring sounds like the firing of cannon; that she told defendant of this but he assured her it would be all right, and undertook to put some of the fluid into her left ear, but she succeeded in knocking his arm away before much got into that ear; that defendant became greatly excited because of plaintiff's condition, but attempted no further treatment;

*Certiorari granted 49 S. Ct. 263, 73 L. Ed. —.

468

that plaintiff immediately .became ill and lost control of her whole body, and was put to bed at the doctor's house and kept there until late in the evening, when she was carried to a cab and taken to her home, where she was carried from the cab and put to bed; that for a time she was totally deaf, and consulted an ear specialist, who treated her every day for two months, and three times a week afterwards, and that she was still taking treatment; that at the time of the trial she could not hear at all with her right ear, but suffered a roaring sound in it, and that she heard what she could hear with her left ear; that up to the time of the treatment in question plaintiff's hearing was perfect; and that she had never suffered from any abscess of the ears or any complaint or disease affecting them. The evidence furthermore tends to show that in February, 1927, plaintiff's ears were examined by a specialist who found that the eardrum of the right ear was practically all gone, and that of the left ear from one-third to one-half gone, and that the tissues were scarred. The specialist testified that various diseases or injuries might cause such a condition, or that it might be caused by the injection of some destructive substance into the ears, and that he was unable to state from his examination the cause of plaintiff's condition, but, in answer to a hypothetical question based upon his examination, together with the evidence submitted on behalf of plaintiff, he gave his opinion as follows: "Why, she had to have something in there to destroy the eardrums. They were destroyed. My opinion is that they were destroyed by something that was put in the ear."

The defendant introduced evidence, including the testimony of experts, tending to sustain the claim that the fluid which he injected into plaintiff's ears was pure mineral oil; that it caused no injury, and that it was proper treatment; that plaintiff was not prostrated by the treatment as claimed by her but was dizzy and nauseated before the treatment, and was relieved and benefited by it; and that plaintiff told defendant that she had taken treatment for her ears from other physicians. The defendant stated that when he examined plaintiff's ears he saw that her eardrums were perforated and that he "dropped in a viscid oil, a viscid mineral oil for the purpose of closing up the external eardrums in order to prevent the noise from penetrating into the middle ear"; that "the noise" then subsided and plaintiff became composed and shortly afterwards left the house; that defendant diagnosed plaintiff's ear trouble as a disease of the inner ear.

The rules applicable to motions filed by defendants for a directed verdict in cases like this are well settled. "The rule supported by the great weight of authority and by reason is that it is only where the court must say that, as a matter of law, no recovery can be had under any reasonable view of the evidence, that a verdict for the defendant will be directed." 39 Cyc. 1577. "It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fairminded men will honestly draw different conclusions from them." Richmond & Danville R. Co. v. Powers, 149 U. S. 43, 45, 13 S. Ct. 748, 749 (37 L. Ed. 642). "The right to have the facts determined by the jury ceases only when but one reasonable view can be taken of the evidence and of its every intendment, and that view is utterly opposed to the plaintiff's right to recover." Baltimore & P. R. Co. v. Carrington, 3 App. D. C. 101, 108. "Where there is testimony of a substantial character to go to the jury, it is always for the jury to determine the question of the preponderance of evidence, subject to the revisory power of the court to order a retrial." Mr. Justice Morris in Warthen v. Hammond, 5 App. D. C. 157, 173. "The court is never justified in directing a verdict except in cases where, conceding the credibility of the witnesses and giving full effect to every legitimate inference that may be deduced from their testimony, it is nevertheless plain that the party has not made out a case sufficient in law to entitle him to a verdict and judgment thereon." Adams v. Washington & G. R. Co., 9 App. D. C. 26, 30. "A motion to direct a verdict is an admission of every fact in evidence, and of every inference reasonably deducible therefrom. And the motion can be granted only when but one reasonable view can be taken of the evidence and the conclusions therefrom, and that view is utterly opposed to the plaintiff's right to recover in the case." Glaria v. Washington Southern R. Co., 30 App. D. C. 559, 563. "In other words it is only where all reasonable men can draw but one inference from the facts that the question is one of law for the Court." Chesapeake B. R. Co. v. Brez, 39 App. D. C. 58, 69. "The courts of review

469

in this country are applying with increasing strictness the rules limiting the right of the trial judge to invade the province of the jury. * * * The rule more generally followed is that 'it is only where all reasonable men can draw but one inference from the undisputed facts that the question to be determined is one of law for the Court.' " Catholic University v. Waggaman, 32 App. D. C. 307, 320.

Judged by these standards, the refusal of the trial court to direct a verdict for the defendant was right. For, while the testimony was conflicting upon important points, there was substantial evidence in support of the plaintiff's claim. If the plaintiff's evidence be accepted as true, together with the reasonable inferences deducible from it, it would be clearly wrong to say that all reasonable men could draw but one conclusion from it and that conclusion utterly opposed to the plaintiff's right to recover. It is true that there was no direct proof of the specific identity of the fluid which was injected by defendant into plaintiff's ears, but it was competent for the jury to determine from all of the circumstances disclosed by the evidence whether it was a harmless mineral oil or a dangerous and destructive fluid, and, if the latter, whether the defendant was negligent in administering such treatment to the plaintiff. It is plain that in many cases a patient, if in fact injured as plaintiff claims to have been, could have no other kind of evidence upon which to rely.

The record furthermore discloses that the motion for a directed verdict, together with all other questions raised in the case, were carefully considered by the trial justice, not only at the time of the trial, but also later when a motion for a new trial was filed by the defendant. This motion was based in part upon a claim of newly discovered evidence, and was supported by affidavits. The trial justice in passing upon it held that defendant's claim of newly discovered evidence was "overwhelmingly" contradicted by counter affidavits filed by the plaintiff, and that upon a reconsideration of the entire case he must overrule the motion, which he did.

▪ Other assignments of error are presented by appellant, among them the charge that the lower court erred in permitting plaintiff's expert witness to answer the hypothetical question put to him by plaintiff's counsel. We find no error in this ruling, for the question called for an answer based on both the personal knowledge of the witness, acquired by his examination of plaintiff, and upon assumptions such as were supported by evidence already introduced in behalf of plaintiff.

▪ The appellant also charges that the lower court erred in refusing to admit in evidence certain written memoranda of the defendant, and of the witness Allen. One of these writings was a memorandum written by defendant on the flyleaf of a federal narcotic record book on October 13, 1922, at the time of his examination of plaintiff on that day, and gave a brief description of plaintiff's condition at the time. The defendant testified that he was not in the habit of making such memoranda in the regular course of practice, but made them only in exceptional cases. Defendant's other memorandum was written at the time of plaintiff's last treatment, and both were offered in evidence, together with a similar memorandum written by defendant's witness Allen. The defendant and Allen testified from memory to all of the facts stated in the memoranda, and were not denied the right to use them to refresh their recollection, but the court excluded the writings when offered as corroborative evidence in the case. This ruling was not erroneous. In Sechrist v. Atkinson, 31 App. D. C. 1, this court held, following Gurley v. MacLennan, 17 App. D. C. 170, that when the plaintiff, testifying as a witness in his own behalf, has a distinct recollection of the circumstances surrounding the transaction in question, it is error to admit in evidence written memoranda of the facts, made by him at the time. It is said by Mr. Chief Justice Shepard: "It appears from the bill of exceptions that the plaintiff had a distinct recollection of the facts, and that he neither used, nor needed, the memorandum to refresh his memory. Its introduction could, therefore, serve no other purpose than to corroborate his evidence. Under these conditions, it was clearly inadmissible." See Rudd v. Buxton, 41 App. D. C. 353, 358; Vicksburg & Meridian R. Co. v. O'Brien, 119 U. S. 99, 7 S. Ct. 172, 30 L. Ed. 299; Romer v. Jaccksch, 39 Md. 585.

Exceptions were taken by defendant to the lower court's charge to the jury, but we find no error in it. The court, at defendant's request, delivered the following instructions to the jury, to wit:

"You are instructed that the defendant Edward J. Gunning was not an insurer of the success of the treatment given the plaintiff by him, but that in giving such treatment he was only required to possess and

exercise that degree of skill and learning ordinarily possessed and exercised by members of his profession in the same line of practice in this locality."

"You are instructed that you can not presume negligence on the part of the defendant in this case, but the burden of proving negligence is upon the plaintiff to establish by a fair preponderance of the evidence that the injuries sustained by plaintiff, if any, were caused by the negligence of the defendant. And if the plaintiff fails to establish this fact by a fair preponderance of the evidence your verdict must be for the defendant."

The charge of the court was throughout full and correct, and conformed to the principles set out in the opinion of this court in Cayton v. English, 57 App. D. C. 324, 23 F. (2d) 745.

The record presents certain other assignments of error, relating in part to a plea of the statute of limitations, but they need not be referred to in detail, for we have fully considered the record and find no error in any of the rulings of the lower court.

The judgment is affirmed, with costs.

VAN ORSDEL, Associate Justice. I concur in the opinion affirming the judgment of the trial court. I am forced to this conclusion, notwithstanding my belief that a very grave injustice has been done in this case. Under the strict rule adopted by this court in the cases cited and relied upon by the CHIEF JUSTICE in his opinion, there is in my judgment sufficient evidence to carry this case to the jury.

A motion for a directed verdict challenges the sufficiency of the evidence to take the case to the jury. It presents a question of law for the trial court and the appellate court which alone can be determined by an analysis of the evidence. It is a mere travesty to say that the court is bound to send the case to the jury, if there is any evidence tending to support the contention of the plaintiff, and shut its eyes to the justice or injustice of a verdict resting upon such a flimsy basis. It is my fixed opinion, as expressed on many occasions, that the rule established in the decisions referred to, and in many other decisions of this court, is too strict, and should be modified to the extent of confiding in the court the power to determine whether or not the evidence is sufficient to raise a reasonable issue of fact, capable of supporting a verdict that will meet the substantial ends of justice.

I trust that such a rule of procedure may yet be adopted by the unanimous concurrence of the justices of this court, as will lift the trial justice in this district from a mere automaton to the exercise of his lawful and proper judicial function of seeing that cases are submitted to juries in accordance with such lawful rules of procedure as will elicit verdicts based upon substantial issues of fact rather than mere caprice and sympathy.

ROBB, Associate Justice (dissenting). The testimony of the plaintiff was almost completely discredited through the testimony of an intelligent and disinterested witness, who was present on the occasion when the acid was supposed to have been put in plaintiff's ears. The majority opinion states that the evidence was circumstantial. In my opinion, there is no basis whatever for the verdict and judgment.

The only physician who testified for the plaintiff was the specialist who examined her, and whose testimony is referred to in the majority opinion. The hypothetical question put to him was based upon an assumed state of facts. On cross-examination this specialist stated, "I understand the question to ask if I made a diagnosis of the cause of her trouble; he has not reached a conclusion in his own mind yet. * * * The putting of acids in the ear of the plaintiff would have practically the same effect on the external canal as it would have on the middle ear, if there was enough of it to hit on the side. In other words, if there was enough acid to go into the middle ear and fill it up, it would be bound to burn it as it went in. It would be destructive of the external canal, as it would be of the eardrum; there would be some tissue destroyed, undoubtedly. When he examined the plaintiff he found the external canal in a normal condition."

If this specialist, after an examination of plaintiff's ears, was unable to reach "a conclusion in his own mind," the jury ought not to have been permitted to guess away the reputation and money of this physician. If acid had been put in plaintiff's ears as described by her, the external canals, according to the uncontradicted testimony of this specialist, would not have remained in a normal condition, but would have been burned. The profession of medicine will become hazardous if judgments such as this are to be sustained.