**CITY–WIDE TRUCKING CORPORATION, et al., Appellants,**

v.

**Emma FORD, Appellee.**

**No. 16774.**

United States Court of Appeals District of Columbia Circuit.

Argued May 4, 1962.

Decided July 5, 1962.

Petition for Rehearing en Banc Denied en Banc July 30, 1962.

Mr. Cornelius H. Doherty, Washington, D. C., with whom Mr. Cornelius H. Doherty, Jr., Washington, D. C., was on the brief, for appellants.

Mr. Martin E. Gerel, Washington, D. C., with whom Messrs. Lee C. Ashcraft and Joseph H. Koonz, Jr., Washington, D. C., were on the brief, for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Mrs. Ford, the plaintiff* in the District Court, was injured after the defendants' dump truck, which with its load, weighed about 16,000 pounds, struck the rearmost of four passenger cars. Defendants' brief graphically describes the episode. Mrs. Ford "was a passenger in a motor vehicle * * * which was stopped in a line of traffic * * *. There were three vehicles stopped behind the car in which plaintiff was a passenger and a truck owned and operated by the defendants hit the rear of the fourth car which caused a chain reaction and the car in which the plaintiff was a passenger was struck." Judgment was entered for Mrs. Ford. This appeal raises no issue as to the defendants' negligence as found by the jury but attacks various rulings by the trial judge.

I

It is claimed that the trial judge erred in not permitting defense counsel to ask his witness a "direct question" as to whether or not he had made certain statements. It does not appear that counsel purported to quote specifically the challenged statement of any particular one of three witnesses. Without our making point of possible ambiguity on that account, we will develop the setting and the background in which the questioned ruling appears.

A police officer testified that defendants' driver said he was driving the defendants' dump truck about twenty miles per hour at the *moment* of impact. Robinson, the driver of the car ahead of the truck, testified that the truck had "rammed" into the rear of his car so that it resulted in a "total loss." The officer further testified that each of the four cars ahead of the truck, and the truck itself, had been damaged more or less severely.

The transcript discloses that after the series of collisions, defendants' driver, Cureton, and his helper, Brooks, got out of the truck, and "everybody that was involved got out of the cars," immediately. There was testimony that they were all "excited." Brooks made a statement to Cureton, admitted as part of the res gestae, "that he was driving too fast all day long," Mrs. Ford testified. Robinson testified that the helper said "I have told you to cut your speed down, way back, I told you to cut your speed."

---

* Throughout we will refer to the parties as they were designated at trial.

On cross examination defendants' counsel again asked "Just what it was that your man said that got out of the truck to Mr. Cureton?" The answer was "Well, I heard him say to him, he said, 'I told you to cut your speed, way back,' that's what he said, 'I told you to cut down on your speed'"—and "He said it a couple of times." Defense counsel brought out that the statement was made by Brooks "near" the car and the truck. Mrs. Thomas, driver of the car in which plaintiff had been riding, testified that the "older man" [Brooks] said "the boy had been driving real fast all day and he had been after him * * *."

Brooks when called as a defense witness was asked certain questions and made reply as follows:

Q. [Defense counsel] Now, did you at any time while you were there, after the accident occurred, on this bridge, make any statement to Roy Cureton,—A. No, sir.

Q. Wait a minute. That you were speeding all day or traveling fast all day and "I told you so?"

[Plaintiff's counsel] Now, Your Honor, I object—

THE COURT: The objection is sustained on the basis that the question suggests the answer; it is a leading question.

[Defense counsel] Well, if Your Honor please, three witnesses have made that statement.

THE COURT: I realize that.

[Defense counsel] I put this witness on only in rebuttal.

THE COURT: Yes.

[Defense counsel] How can I rebut unless I ask that particular question?

THE COURT: Certainly you can ask him if he had any conversation at all.

[Defense counsel] That doesn't make a direct denial of that. All right, sir.

[Defense counsel] Did you make any statement at all to Roy Cureton at any time? A. No, sir.

Q. Was anything mentioned about speed? A. No, sir.

■ Defendants here argue that the trial judge erred in his ruling that the question as noted was "leading." Trial judges have been and must be given a wide discretion in matters such as this. Some judges will permit questions to be so framed as to take account specifically of the exact testimony which the witness is called upon to refute. Certainly in some circumstances that approach is entirely proper. We have quoted the testimony challenged in rebuttal, for the three witnesses in phrasing their recollection had differed, not unusually, in varying degrees as to the precise wording of what they had heard Brooks say. But the substance of their recollection was uniform, and it is our view that in refutation of the questioned testimony, the defense received the full import of the denial by Brooks. Not once, but twice, he testified that he had made no "statement" to Cureton after the accident. Nothing had been "mentioned about speed," Brooks said, so that an issue was squarely raised. If the jury had believed Brooks, the testimony of the three witnesses on this point obviously could not stand. We fail to see how the defendants were prejudiced in light of the record as developed above. After all, the whole purpose of examination as well as cross examination, is to get at the facts and to exhibit to the jury a basis for its resolution of the issues. We are satisfied that the trial judge did not abuse his discretion.[1]

1. Northern Pacific Railroad v. Urlin, 158 U.S. 271, 273, 15 S.Ct. 840, 39 L.Ed. 977 (1895); St. Clair v. United States, 154 U.S. 134, 150, 14 S.Ct. 1002, 38 L. Ed. 936 (1894); Mitchell v. United States, 213 F.2d 951, 956 (9 Cir. 1954), cert. denied, 348 U.S. 912, 75 S.Ct. 290, 99 L.Ed. 715 (1955); United States v. Montgomery, 126 F.2d 151, 153 (3 Cir.), cert. denied, 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1754 (1942); Reeves v. Low, 8 App.D.C. 105, 117 (1896).

## II

It is next asserted that the trial judge erroneously allowed the plaintiff on June 20, 1961, to call a medical witness, Dr. Gordon, as to the permanency of Mrs. Ford's injury. Defense counsel objected although he had received on May 23, 1961 a copy of Dr. Gordon's report.

THE COURT: Now, what detriment do you sustain?

[Defense counsel] I relied upon the stipulation we have in the case * * *.

THE COURT: Do you allege that you are taken by surprise?

[Defense counsel] No. That has nothing to do with it. It doesn't come under that. I am saying we have a definite stipulation.

The record shows that at pretrial, January 31, 1961, plaintiff had asserted her intention to urge a claim for permanent injury to her cervical and lumbar spine, adding that supporting evidence was not then available. The parties accordingly stipulated for an exchange by March 1, 1961, of medical reports *then* in hand and for "a similar exchange of all such reports within 48 hours of the alert for this case for trial."

No time limit was set for providing any such later reports. Plaintiff's counsel agreed to make his client available for a physical examination by a physician of defendants' choice.

With the case approaching trial status, Dr. Gordon examined the plaintiff on May 8, 1961, but a written report of his findings had not been received on May 9, 1961 when plaintiff's counsel moved to amend the January pretrial stipulation. He had informed defense counsel of "what the doctor says." Defense counsel objected "for the simple reason that this was pretried January 31, 1961." The pretrial judge ruled that no amendment was necessary since the original pretrial stipulation was broad enough to include the claim of permanent injury. Mrs. Ford's counsel again offered the plaintiff for examination. The judge asked defense counsel "Do you want any examination?" He replied, "Your Honor please, I am ready for trial and that is all I can say."

Clearly, if the case had then gone to trial without plaintiff's counsel having supplied Dr. Gordon's report within forty-eight hours in advance, a very different problem would have arisen. There still would have been the question of whether an injured plaintiff properly should be debarred in her only chance for recovery from presenting evidence of her full claim.

But the case did not then go to trial; trial did not commence until June 19, 1961. Meanwhile, Dr. Gordon's report had been furnished to the defense nearly one month before trial. The trial judge saw no breach of the January stipulation in view of such facts. Neither do we.

Defense counsel would argue that an exchange between plaintiff's counsel and Judge Pine altered all arrangements which previously had been made. It seems that on May 12, 1961, counsel for the parties appeared before Judge Pine as the plaintiff asked for a continuance of one week due to the fact that a key witness, Dr. Braden, who had treated the plaintiff on some 30 occasions, had made previous plans to be away at a medical convention. He was already under subpoena and, no doubt, could have been compelled to forego his own plans if the case had to be tried that very week. Defense counsel, objecting, pointed out that plaintiff's counsel "wanted to change the pretrial this past Wednesday and did that."

Judge Pine granted the continuance of one week, observing "there will be no more continuances after that." It is asserted that the continuance was conditioned on assurances that the "status quo" was to be maintained, which the defense interprets as precluding the plaintiff from producing Dr. Gordon. We do not agree that the record may fairly be so construed. Judge Pine was talking about Dr. Braden. The defense then

knew that Dr. Gordon had examined Mrs. Ford on May 8, and the defense attorney had been informed on May 9th of "what the doctor says." All that was lacking was Dr. Gordon's medical report which was to be furnished at least forty-eight hours before trial. The transcript of the proceedings before Judge Pine makes no reference to Dr. Gordon. We find no basis whatever for the contention that plaintiff agreed to forego presenting Dr. Gordon as a witness in return for the continuance necessitated by the intended absence of Dr. Braden.

### III

Defense counsel argued to the trial judge that he relied upon the "stipulation," supra, as the "main ground" for his objection to testimony by Dr. Gordon. He added, in effect, that the doctor *could* not qualify, since he had examined the plaintiff "purely for the purpose of testifying." As Dr. Gordon had "never treated her," counsel insisted, the doctor "can't testify under those circumstances."

The judge asked: "Can't he examine her and testify as to his opinion?" [Defense counsel] "Not under the cases that I have, if Your Honor please; they very definitely say no."[2] Not persuaded, the trial judge allowed examination of Dr.

Gordon to proceed. Appellant attacks that ruling.

Appellant seems to have anticipated that Dr. Gordon, a specialist in orthopedic surgery, was being called to give an opinion based only on *statements* made to him by Mrs. Ford, not for purposes of treatment,[3] but solely to qualify him as a witness. In the latter circumstance, some cases hold that such statements are inadmissible.[4] Even in such cases, however, it is seen that a qualified expert may testify as to his findings in the course of his own physical examination of the party and his opinion based thereon, and may answer competent hypothetical questions propounded to him as an expert.[5] We have allowed an expert, even in a criminal case, to testify as to the opinion he reached based on his physical examination of the complainant.[6] In District of Columbia v. White,[7] this court found no error where an expert medical witness testified that at a consultation with the plaintiff's physician, he was given a history of the case, including the fact of an earlier injury. "Such information furnishes the basis for the opinion or conclusion arrived at in almost every diagnosis,—certainly in cases where the trouble arises from accident," the court noted.[8]

---

2. The judge: "Does your position apply both to the Plaintiff and the Defendant? * * * What about 98 percent of the Defendant's doctors who only examine the patient to testify in court?" Defense counsel: "That's true; no question about that, and that's by agreement. That's understood. They are permitted to do that, and sometimes it is necessary."

As to considerations applicable to medical experts called by the defense, see Walker v. West Coast Fast Freight, Inc., 233 F.2d 939, 942 (9 Cir. 1956). And see Fed.R.Civ.P. 35, 28 U.S.C.A.

3. As to which, see Aetna Life Ins. Co. v. Quinley, 87 F.2d 732, 733 (8 Cir. 1937) and cases cited. Cf. Kaufman v. Kaufman, 82 U.S.App.D.C. 397, 164 F.2d 519 (1947).

4. Chicago & N. W. Ry. Co. v. Garwood, 167 F.2d 848, 859 (8 Cir. 1948); Nashville, C. & St. L. Ry. Co. v. York, 127 F.2d 606,

611–612 (6 Cir. 1942); cf. Meaney v. United States, 112 F.2d 538, 540 (2 Cir. 1940); see Washington & O. D. R. Co. v. Slyder, 43 App.D.C. 95, 99 (1915); Washington, A. & M. V. R. Co. v. Fincham, 40 App.D.C. 412, 419 (1913). And see generally, Annot., 51 A.L.R.2d 1051 (1957).

5. See, e. g., Nashville, C. & St. L. Ry. Co. v. York, supra note 4, 127 F.2d at 611. Cf. Gunning v. Cooley, 58 App.D.C. 304, 305, 30 F.2d 467, 468 (1929), aff'd, 281 U.S. 90, 96, 97, 50 S.Ct. 231, 74 L.Ed. 720 (1930); United States v. Woltman, 61 App.D.C. 52, 53, 57 F.2d 418, 419 (1932).

6. Crichton v. United States, 67 App.D.C. 300, 302, 92 F.2d 224, 226, cert. denied, 302 U.S. 702, 58 S.Ct. 22, 82 L.Ed. 542 (1937).

7. 48 App.D.C. 44 (1918).

8. Id. at 47.

Here one of the medical questions in issue was the degree of recovery from or the possibility of permanent residual effects of the injury. Dr. Gordon testified concerning the series of tests to which he subjected Mrs. Ford. He rested his prognosis upon what he recited as "sufficient findings on an objective basis." It is clear from the record that his opinion was so predicated. Accordingly, Dr. Gordon was a competent witness [9] and his testimony was properly received.[10]

## IV

Dr. Braden first saw Mrs. Ford on February 7, 1960, at Casualty Hospital. Thereafter and down to May 3, 1961, he saw her on some thirty occasions. Based on his experience with and knowledge of Mrs. Ford's injury and the course of her recovery, he expressed the opinion "that this thing is probably permanent." Dr. Gordon was asked to express an opinion as to whether Mrs. Ford "does or does not have a permanent residual weakness or disability as a result of her injury." He answered "it would appear at this time that it is permanent but I can't be absolutely sure."

Defendants contend that such evidence was insufficient to predicate admission of mortality tables indicating a life expectancy of 33 years. We disagree. What weight the jury might accord to that evidence was a matter solely within its province. If the jury concluded that permanency of injury in some degree had been shown, the mortality tables provided competent statistical evidence, not as "absolute guides of the judgment and conscience of the jury," [11] but as data to be taken into account in calculating a basis for the award of fair and reasonable damages in light of all the evidence.

## V

We have carefully considered all claimed errors, so earnestly and diligently pressed by defendants' counsel. We are satisfied that the defendants have not shown prejudicial error affecting their substantial rights.[12] Accordingly the judgment of the District Court is

Affirmed.

9. Cf. Meaney v. United States, supra note 4.

10. Cf. Northern Pacific Railroad v. Urlin, supra note 1, 158 U.S. at 274, 15 S.Ct. at 841 where the Court said: "As one of the principal questions in the case was whether the injuries * * * were of a permanent or of a temporary character, it was certainly competent to prove that, during the two years which had elapsed between the happening of the accident and the trial, there were several medical examinations into the condition of the plaintiff. Every one knows that when injuries are internal and not obvious to visual inspection, the surgeon has to largely depend on the responses and exclamations of the patient when subjected to examination."

11. Vicksburg, &c., Railroad Co. v. Putnam, 118 U.S. 545, 554, 7 S.Ct. 1, 2, 30 L. Ed. 257 (1886) ; Coast S. S. Co. v. Brady, 8 F.2d 16, 19 (5 Cir.), cert. denied, 269 U.S. 578, 46 S.Ct. 103, 70 L.Ed. 421 (1925) ; 6 Wigmore, Evidence § 1698 (3d ed. 1940).

12. Fed.R.Civ.P. 61; 28 U.S.C. § 2111 (1958) ; Palmer v. Hoffman, 318 U.S. 109, 116, 63 S.Ct. 477, 87 L.Ed. 645 (1943) ; W. M. and A. Transit Co. v. Radecka, D.C.Cir., 302 F.2d 921, at page 926.