Lillie WASHINGTON, Plaintiff,

v.

WASHINGTON, VIRGINIA & MARY-LAND COACH COMPANY, Defendant.

Civ. A. No. 3147-61.

United States District Court
District of Columbia.

March 8, 1966.

Joseph Zitomer, Silver Spring, Md., for plaintiff.

Hogan & Hartson, by John P. Arness, Washington, D. C., for defendant.

KEECH, District Judge.

This case is now before the court on motion by defendant transit company for judgment n. o. v., a new trial, or remittitur, following a verdict in favor of the plaintiff in the amount of $18,000.00 for injuries and losses growing out of an accident while the plaintiff was a fare-paying passenger on a bus of the defendant.

Defense counsel sets out six matters in which he feels the court committed error. The court will deal with these six seriatum, and will then consider, as Item (7), the request for remittitur.

(1) Defendant claims that there was insufficient evidence to go to the jury on the issue of the suddenness of the injury-producing stop. The plaintiff testified that on April 14, 1960, she boarded a westbound bus of the defendant at 15th and K Streets, N.W., paid her fare, and had taken two or three steps to the rear of the bus along the side seat when the bus came to a "fast" stop, throwing her backward to the floor, with the result that she was injured. Defendant's operator, on the Company's report form, answered the question, "Any sudden starts, stops or jerks?", with the word "Partially." Immediately under this answer appeared: "If so, describe" —to which the answer was: "Stopped somewhat faster than normal." Under District law, a passenger on a bus assumes the ordinary risk incident to the movement of a bus over public highways, which includes the usual and ordinary

jerks, jolts and stops. This court is also conscious of decisions which hold that the mere use of an adjective or an adverb by the plaintiff or her witness is not sufficient to make for negligence on the part of a common carrier such as the defendant here, and that there must be more than such characterization. Likewise, the mere fact that a passenger falls is not sufficient. However, in the instant case, besides plaintiff's characterization of the stop as "fast", there is the report by defendant's operator, the one best able to know, in which he stated that there was a "partially" sudden stop and that the bus stopped "somewhat faster than normal". Furthermore, the jury had before it the effect of the sudden stop. The stop of the bus was sufficiently sudden and violent to reverse plaintiff's movement from the normal forward lean of a person walking toward the rear of a bus to a backward motion and down to the floor of the bus.

■■ The degree of suddenness that must be involved in a stop to remove it from the category of normal jerks and jolts, the risk of which is assumed by a passenger, is a coefficient of the degree of care required of the bus company. That has been described as the highest degree of care. Williams v. Capital Transit Co., 94 U.S.App.D.C. 221, 215 F.2d 487 (1954). The court is not prepared to say that a stop described by the defendant's own agents as "partially" sudden, and "somewhat faster than normal" is, as a matter of law, a jerk or movement which is not more than the necessary or usual incident of rapid transit operation.

■ (2) Defendant complains concerning the receipt in evidence of the accident report made by the defendant's operator Jones, Jones having been unavailable to either plaintiff or defendant at the time of the trial. When witness Cross, who was on the bus as operator Jones' supervisor, was called by plaintiff, he was unable to recollect any of the facts pertaining to the accident, nor could his memory be refreshed by viewing Jones' accident report. He did, however,

testify that he had read the report and that if it had failed to reflect correctly any data therein he would have caused it to be corrected. While the witness, Supervisor Cross, did not actually write the statement, he did see it and pass judgment on it as correct. It therefore became for him a correct record of an incident which took place while he was supervising the operation of the bus. See 3 Wigmore, Evidence § 748 (3d ed. 1940). The mere fact that, in response to direct questions put to him by defense counsel on cross examination, this witness later attempted to indicate lack of knowledge as to certain matters embraced within the statement is not sufficient, in the light of his direct testimony, to render inadmissible the statement which was received in evidence.

■ Furthermore, aside from its admissibility as the past recollection recorded of witness Cross, it should be noted that Jones, in his deposition, admitted the report constituted his past recollection recorded and indicated that he had no present recollection of the circumstances giving rise to the report. Defendant by judicial admission established the report as that of operator Jones. In addition, defendant expressly waived its rights to cross-examine Jones as to the accuracy of the report by a letter to plaintiff's counsel (Plaintiff's Ex. No. 3). Under these circumstances, the court would have admitted the report as the past recollection recorded of operator Jones if it had not found it also constituted the past recollection recorded of witness Cross. See 3 Wigmore, Evidence §§ 734, 744–748 (3d ed. 1940); Gunning v. Cooley, 58 App.D.C. 304, 30 F.2d 467 (1929).

(3) Defendant further maintains that the court was in error in instructing on res ipsa loquitur. Defense counsel's arguments on this point are multifarious. First he argues that, once plaintiff showed by the evidence that the proximate cause of her harm was the stop, this established the specific cause of her harm and there was no room left for the inference embodied in res ipsa. He cites

Levy v. D. C. Transit System, Inc., D.C. Mun.App., 174 A.2d 731 (1961). Defendant also indicates that, if the unusual nature of the stop was satisfactorily shown, the doctrine became inapplicable and its inclusion in the charge was, as a practical matter, prejudicial. He strongly argues that the introduction of the doctrine allowed the plaintiff to establish by inference the unusual nature of the stop, and that, since the establishment of the unusual nature was a prerequisite to applying res ipsa, the instruction allowed the jury to pile inference upon inference.

■ Basic to defendant's first and second contentions is the notion that, once specific evidence introduced by the plaintiff shows that the cause of her harm was a stop and that the stop was of an unusual nature, the bus company is liable without any additional proof. This proposition finds no support in the cases. A violent stop is not per se negligence; it merely gives rise to an inference of negligence, i. e., the inference embodied in res ipsa loquitur. In the same way, proof by a plaintiff that he was struck by the proverbial barrel does not per se give rise to liability on the part of the source of that barrel. Without the assistance of the res ipsa loquitur inference plaintiff in the instant case would be compelled to prove specific acts of negligence on the part of the bus driver *leading* to the violent stop. In view of the high degree of care required of common carriers, the overwhelming probability is that the violent stop with resultant physical effects hereinbefore referred to would not have taken place unless there was in fact a violation of the high-degree-of-care requirement. The law recognizes this by applying the doctrine of res ipsa. If a sudden stop in itself produced liability, there would of course be no cases applying res ipsa to sudden-stop situations.

■ The evidence concerning the cause of the sudden stop is not such as to make res ipsa loquitur unnecessary. Plaintiff did introduce evidence that operator Jones was following a D.C. Transit bus so closely that he was unable to see the light at the intersection of 15th and K until he was going into the intersection, that only then did he see that it was turning red, and that he was thus forced to make the "fast" stop. However, this does not make res ipsa unnecessary. For proof of specific circumstances to render the inference under res ipsa inapplicable, the circumstances must have been so completely elucidated that no inference of defendant's liability could reasonably be made. Loketch v. Capital Transit Co., 101 U.S.App.D.C. 287, 288, 248 F.2d 609, 610 (1957). Plaintiff has not so clearly shown the causes of the stop as to leave nothing to inference. Whether the bus operator was negligent in producing the unusual stop was an issue before the jury, and the jury could not only legitimately rely on plaintiff's evidence of what caused the stop, but could infer negligence under res ipsa from the unusual stop itself. It was for the jury to determine which of the methods to apply. In the instant case the evidence was sufficient to support a verdict in favor of the plaintiff by either method—inference or proof of specific negligence.

■ In considering the contention that plaintiff was able to use the doctrine of res ipsa loquitur to establish the violence of the stop, it seems appropriate to see at what point in the charge res ipsa loquitur was dealt with. It followed full definition of common law negligence, the duty of a common carrier, and the proposition that a carrier is not an insurer of the passenger's safety, but that the operator has the duty to exercise the care and caution which a bus driver of reasonable skill and foresight could fairly be expected to exercise over the conditions leading up to and resulting in the accident. Then, in substance at least, if not verbatim, defendant's requested instruction No. 6 was granted:

> "A common carrier, such as the defendant is not liable for injuries and damages which may have been sustained as the result of jerks or movements which are not more than the necessary or usual incidents of

rapid transit operation. The law requires that passengers take precautions against jerks and movements, and states that they must assume the risks of those movements as an incident to their travel on vehicles of public conveyance, unless you find that the accident alleged by the plaintiff was the result of an unusual and extraordinary force which could not reasonably be said to have happened in the ordinary operation of the vehicle."

This specific request was followed with an instruction that it was not sufficient for the plaintiff merely to describe the movements of the bus as "violent" or "terrific" but that the evidence must be such as to prove physical facts concerning the existence or effect of the jerk or jolt or stop which would cause a reasonable man to conclude that such violent or unusual jerk, jolt or stop did take place. It was immediately in the wake of these instructions that the court charged the jury with reference to the doctrine of res ipsa loquitur. The court ultimately summed up the principle by instructing that when (1) the cause of an accident is known, (2) the instrumentality is in defendant's exclusive control, and (3) that instrumentality is unlikely to do harm unless the person in control is negligent—then the mere happening of the accident is sufficient to give rise to an inference of negligence on the part of the defendant.

Under the facts of record and the instructions given, the jury could not infer negligence short of a finding by it that the stop, jerk or jolt was *other than* that which would be expected from the operation of a rapid transit operation. The jerks-and-jolts instruction is cast as a complete immunity from liability for accidents produced by the normal movement of the carrier, regardless of what actually caused the injury-producing jerk. The jury must make a finding as to the required *quality* of the movement, namely, unusual or extraordinary, before it can infer negligence under res ipsa. As a practical matter the jerks-and-jolts instruction amounts to a statement that a carrier cannot be found negligent for such normal movements. Thus, the third element required for the application by the jury of the doctrine of res ipsa loquitur would not be satisfied unless the jury found the jolt, jerk or stop was unusual or extraordinary.

■ (4) Defendant contends that the court erred in permitting plaintiff to testify that her failure to see a doctor for a specified period was due to her economic status. The propriety of permitting such a question was born of the specific statement of defense counsel that it was his purpose to comment on such failure as showing absence of injury and pain incident to the accident. If this question had not been permitted, a distorted picture would have been presented to the jury. The defendant cross-examined at substantial length the plaintiff as well as the many doctors who were called, and in no wise brought forth evidence which showed an absence of need for medical attention. On the contrary, the record clearly shows the plaintiff was suffering from the accident up to and including the period of the trial and, further, that for such pain physiotherapy treatment was at least a temporary relief.

■ (5) Defendant further argues that the court erred in failing to charge with reference to unavoidable accident. Suffice it to say that the evidence in the case was not such as to permit of the charge. There was no evidence to even suggest that the unusual stop would have taken place with the bus operator exercising the degree of care required of a common carrier.

■ (6) Defendant contends that plaintiff's counsel in his closing argument generated undue sympathy by referring to her status. The short answer to this contention is that no exception was taken to the argument at the time thereof. Apart from this, plaintiff's argument was in fact a rebuttal of the innuendos arising from the examination of the plaintiff by defense counsel and

his argument with reference thereto. Defendant further contends that the adverse effect of plaintiff's argument was enhanced by the fact that there had been a recent boycott of the defendant's operation. This subject was not broached on defendant's extended voir dire examination of the prospective jurors and was not mentioned at any time during the trial. If this was a matter which caused the defendant concern, he had his chance to eliminate its effects through questions on voir dire and challenges. The present occasion is hardly a suitable one for raising the issue for the first time.

 (7) Defendant transit company suggests a remittitur to $3,500.00. Counsel bases this request largely on the fact that the out-of-pocket expenditures of the plaintiff were small and that there was no claim for loss of earnings. This accident occurred in 1960. The case was tried in 1966. As of the time of trial the jury had before it evidence that during the entire period from the date of the accident until the trial plaintiff had endured pain and suffering. There was medical testimony to the effect that the injury sustained by her was permanent in character, that the type of injury sustained was such as would produce such pain and suffering, and that pain and suffering could be expected for the rest of her life. Reputable physicians called by the defendant support in certain material respects plaintiff's doctors on this matter. Plaintiff was seventy years of age at the time of trial and her life expectancy was 12.7 years. In addition to the pain and suffering and the small out-of-pocket expenditures by plaintiff, there is unchallenged evidence that the plaintiff, a woman who through the many years of her life had been right-handed, had to change from using her right arm to using her left. There could be no challenge that this change did in fact take place, for defendant's own orthopedic surgeon testified that plaintiff's right arm showed atrophy to the extent of a half inch lessening in circumference when compared to the left arm. This is not a full measure of the atrophy, in

that the two arms were not the same size at the time of the accident. The court will take judicial notice that one would have greater development in the arm which he normally used for many years—here, the right. With this evidence before the court, and applying the rule of law which is applicable when dealing with a remittitur, the court is constrained to deny the request for remittitur. While the amount awarded by the jury might be larger than that which the court would have given, it is not, under all the facts and circumstances, an amount which so shocks the conscience of this court that a reduction in the verdict is required.

For the foregoing reasons the defendant's motion, in its three parts, should be denied. It is therefore, this 8th day of March, 1966,

Ordered that the said motion be, and the same is hereby, denied.