## ATLANTIC COAST LINE RAILROAD CO. *v.* TEMPLE, ADMINISTRATRIX.

No. 453.   Argued February 17, 18, 1932.—Decided March 14, 1932.

*Messrs. Thomas W. Davis* and *Douglas McKay* for petitioner.

*Messrs. John F. Williams* and *R. E. Whiting* for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Judgment recovered by plaintiff (respondent here), in an action under the Federal Employers' Liability Act for the death of her intestate, was affirmed by the Supreme Court of the State. This Court granted a writ of certiorari. The question is whether there was sufficient

evidence of negligence on the part of defendant to justify the submission of the case to the jury.

Plaintiff's intestate was employed by defendant as locomotive engineer of a train running between Augusta, Georgia, and Sumter, South Carolina, in the early morning of May 20, 1921. At a point near Augusta, and about one and three-tenths miles north of a station called Beech Island, the train was derailed, the engine overturned, and the engineer killed. The accident took place on the line of the Charleston & Western Carolina Railway Company over which defendant, the Atlantic Coast Line, had trackage rights, and the negligence charged was that the employees of the former company working on the roadbed had failed properly to spike and bolt one of the rails, causing it to spread. There were two witnesses for plaintiff. One of these, who lived near Beech Island station, testified that, while driving across the railroad at that station on the afternoon before the accident, he had seen section hands working on the railroad, apparently fixing a rail, at a point between that station and a gravel pit which was not far from the place of the accident. He ' did not pay much attention '; he ' just saw them working '. It was conclusively shown by the evidence that there was a curve on the track a little less than a mile above Beech Island station and that by reason of the contour of the land, with an intervening bluff, it was impossible for one at the crossing at the station to see the place where the wreck occurred or within at least a quarter of a mile of it. The witness knew nothing of the wreck and there was no evidence that the men whom he described had been working at the place of the accident or had any connection with the cause of the derailment. The other witness for the plaintiff had visited the scene shortly after the wreck occurred. He testified that the rail was ' torn up ', that spikes and bolts were ' laying on the cross ties ', that three or four ties were ' taken loose ',

that there was no doubt the spikes had been 'pulled', that 'it was not a matter of fixing the track and leaving them out', that the bolts and angle bars 'had been removed certain', that there was a dent about the middle of the rail indicating that the rail 'had been pushed in', and that one end of the rail had been 'pulled in' and 'spiked in from the outside' making the track 'too narrow' so that a train coming from Augusta would be derailed. Thinking that 'it looked like it had been wrecked and there might be some tools,' the witness made a search, and following tracks leading to a gravel pit about fifty or sixty feet away, he found behind some bushes a crowbar used for pulling spikes and a wrench for loosening bolts; that these tools had identification marks showing that they belonged to the Southern Railway Company whose line was five or six miles distant.

The testimony for defendant gave a more extended description of the conditions at the place of the wreck, confirming the testimony as to the pulling out of the spikes, the removal of the bolts and angle bar, and the displacement of the rail. One of the witnesses, a planter living at Beech Island, testified that, on examining the place of the wreck on the same morning, he found that several spikes had been drawn, that the rail had been 'set in' and 'spiked down on the outside,'—that 'the rail was pushed in and then driven down in new place.' Another witness, a passenger on the wrecked train and also an inspector and special investigator for the Interstate Commerce Commission, who had made an immediate examination of the track, testified that, at the point of derailment, one rail was out of place and that the angle bars had been removed from each end of the rail; that 'the bolts and nuts indicated that they had been removed by some one on purpose' and the condition of the bolts showed that they had not been stripped in any way; that there was no indication that the condition of the

track had caused the rail to spread; that an inspection of the locomotive and cars showed no defect that would contribute in any way to the derailment; that the road apart from the wreck was in 'good condition'; that the ties, rails and angle bars were those of 'the regular and proper strength'; that the inspection in that territory compared favorably with the inspection of railroads in general; that it appeared that 'the spikes had been pulled directly upward' and that 'had they been crushed out upon the flooring of the rail, it would naturally have made a slanting pull or splintered the tie, but they were pulled out straight.' The testimony of the roadmaster was that he had made a careful inspection of the track in question as late as five-thirty in the afternoon before the accident. The section foreman testified that the track was in good condition, that the section men had not worked at the place of the wreck for several weeks, that during the week of the accident they had not been at work within a mile and a half of that place, and that on the previous day they were working about two miles to the south; that they had no tools branded with the name of the Southern Railway Company. The section foreman of the Southern Railway Company testified that on the morning of the accident he had missed a 'claw bar and wrench' which he had put in the tool house the evening before, and that he found that the tool house had been broken into. There was evidence that these were the tools found near the wreck. Several trains passed over the track in question between the afternoon before and the time of the wreck and the engineers testified that they observed nothing unusual. Two trains passed on the way to Augusta only about one hour and a half before the accident; the point is made that there was testimony that the position and condition of the rail were such that this might be possible despite the displacement of the rail, although a train running in the

opposite direction (like the one in question) after the rail had worked out of alignment, would be derailed. But the argument with respect to the time when the displacement might have been effected, which in any event could not have been very long before the accident, and the contention based on the position of the nuts and bolts, are unavailing in view of the lack of evidence tending to show that the defendant was in any way responsible for the condition which caused the derailment.

There are many details which it is unnecessary to review as they do not affect the essential question. It is sufficient to say that upon a careful examination of the entire record we are unable to discover any basis for a finding of negligence on the part of defendant. The motion for the direction of a verdict in its favor should have been granted. *Atlantic Coast Line R. Co.* v. *Davis,* 279 U. S. 34; *Gunning* v. *Cooley,* 281 U. S. 90; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Saxon,* 284 U. S. 458.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*