# NASHVILLE, C. & ST. L. RY. CO. v. YORK.

## No. 8980.

Circuit Court of Appeals, Sixth Circuit.

April 22, 1942.

W. F. Murrah, of Memphis, Tenn., and Walton Whitwell, of Nashville, Tenn. (Wm. A. Miller, Edwin F. Hunt, and Wm. H. Swiggart, all of Nashville, Tenn., on the brief), for appellant.

Roberts P. Elam, of St. Louis, Mo. (Mark D. Eagleton, of St. Louis, Mo., and Joseph H. Norville, of Memphis, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The railway company has appealed from a judgment in the district court on the verdict of a jury awarding appellee $25,000 damages, for personal injuries received while serving as brakeman in the employ of appellant.

The injured man and the conductor were seated in the cupola of a caboose, attached to the rear end of a freight train consisting of an engine and thirty-seven cars. The train was proceeding southwardly from Bruceton, Tennessee, to Nashville, Tennessee. The conductor was seated on the east and the appellee on the west side of the cupola, and each was keeping a lookout ahead.

A signal post and sign on the west side of the track, at a point about a half mile north of a left curve some two miles south of McEwen, directed reduction of speed to twenty miles an hour, for the reason that the roadbed and track were being repaired by a section crew in the vicinity of the curve. The reduced speed signal was observed by the application of brakes by the engineer, and the freight train entered the curve at a speed rate of around twenty miles per hour.

Suddenly, the conductor swung for a grab iron and shouted. Through the front window of the cupola, appellee observed that some of the cars ahead were off the track and that the car next to the caboose was careening. He seized two grab irons; but was hurled from the cupola with such force as to strain his back and strike his right hip against the corner of a table below. The caboose had been derailed and thrown against an embankment.

Section men helped appellee out of the caboose. After resting on the ground for a few minutes and recuperating from the shock, appellee, who did not consider himself seriously injured at the time, walked a half to three-quarters of a mile to the rear of the train to perform his flagging duties. Thence, he went into McEwen on a motor car, returned to the train and with other members of the crew rode into Nashville, some fifty-five miles away. The derailment occurred around eleven o'clock A. M., and the engine and the front 27 cars which had not been derailed arrived in the Tennessee capital city around 4:30 o'clock in the afternoon.

Appellee brought action against the carrier under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59; and, resting upon the applicability of the doctrine, res ipsa loquitur, introduced at the trial only his own testimony and that of two doctors. A motion by the railway company for a directed verdict was overruled.

Whereupon, appellant introduced as witnesses the engineer and the fireman who were on the engine of the freight train at the time of the derailment; the section foreman in charge of the repair work near the point of derailment; the track supervisor of the railroad section where the derailment occurred; the foreman of an adjacent section, who, shortly after the accident, inspected the track at the point of and north of the derailment; the engineer and the fireman of a train which had passed over the derailment point without trouble shortly before the accident; the general foreman of the car department in charge of maintenance of equipment; the assistant engineer on maintenance of way; and four doctors.

It seems unnecessary to detail the evidence. Suffice it to say that the inspection of the derailed cars and caboose after the accident disclosed no defects which might have caused or contributed to the derailment. The railroad track, or roadbed, north of the derailment point was by several witnesses said to have been in good condition and alignment; and, before the accident, the repair work south of the point of derailment was being done by experienced, competent men, in accordance with customary methods.

The fireman of the partly derailed freight train, however, admitted on cross-examination the correctness of a statement made by him before the trial that, as the engine "got into the curve," he had observed the section men working on the tracks; that "the tracks were stripped from the north end of the curve to about the center of the curve;" and that "there was no ballast holding the ties or rails down in that area," except "the weight of the tie and rails." On the witness stand, he stated that "the end portion of the ties was stripped," and that the ballast in the stripped or open places was missing. He testified, further, that the stripped portion of the track was between five and six rail lengths, although the engineer of the train had estimated the unballasted portion of

the track as between three or four rail lengths of thirty feet each.

When asked whether the place where he saw the ballast stripped was from the center of the curve back north toward the caboose, the fireman replied that it was north of the caboose. Moreover, he located the place where the first of the ten cars started to turn over as on the curve, although he could not say whether in the center, or not.

The section foreman who was in charge of the crew working near the point of derailment admitted that, after the accident, he was disciplined by the railroad company for violating its rules, in that he had failed to go back thirty rails from where he was working to ascertain, by inspection, whether the joints were bolted tight. While he was corroborated by two other witnesses that, after the accident, the track was in good condition at the point of derailment, he was contradicted as to this by the testimony of the railroad company's assistant engineer of maintenance of way, who testified that, after the accident, the rails, both north and south of the point of derailment marked by the section foreman, were out of gauge.

After all the evidence in the case had been received, the motion of appellant for a directed verdict was renewed, and overruled. On this appeal, the action of the district court, in denying the motion, is assigned as error.

(1) Prior to Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, actions under the Employers' Liability Act were undoubtedly governed and controlled by rules of law as announced in the federal courts. Chesapeake & Ohio Railroad Co. v. Kuhn, 284 U.S. 44, 47, 52 S.Ct. 45, 76 L.Ed. 157; Western & Atlantic Railroad Co. v. Hughes, 278 U.S. 496, 498, 49 S.Ct. 231, 73 L.Ed. 473; Chicago, Milwaukee & St. Paul R. R. Co. v. Coogan, 271 U.S. 472, 474, 46 S.Ct. 564, 70 L.Ed. 1041.

No pronouncement in the Tompkins case, or in subsequent decisions of the Supreme Court, indicates that federal decisions are not still controlling in such cases. We look, therefore, to the federal courts for guidance upon questions of law presented by this appeal.

(2) Appellant asserts that the res ipsa loquitur rule has no applicability to this case; and that there is no substantial evidence to support the verdict of the jury and the judgment entered thereon.

In San Juan Light & Transit Co. v. Requena, 224 U.S. 89, 98, 99, 32 S.Ct. 399, 401, 56 L.Ed. 680, the Supreme Court said: "When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

The highest court has made it clear that while the res ipsa loquitur doctrine does not compel an inference of negligence from the facts of an occurrence, it does warrant such inference; that the facts of an occurrence furnish circumstantial evidence of negligence where direct evidence of the same may be lacking; that the evidence must be weighed, but not necessarily accepted as sufficient; that explanation or rebuttal is called for, though not necessarily required; that a case for the jury is made, though the jury verdict is not forestalled; that the defendant's general issue is not converted into an affirmative defense; and that "when all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff." Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815.

This court has applied the doctrine in conformity with these expressions of the Supreme Court. Rayburn v. Pennsylvania R. Co., 6 Cir., 76 F.2d 505, 506.

In Lowery v. Hocking Valley Ry. Co., 6 Cir., 60 F.2d 78, a judgment in favor of a railroad carrier, in an action brought by a trainman under the Federal Employers' Liability Act, was reversed for the failure of the district court to instruct the jury properly that an inference of negligence was permissible against the railroad from the fact of derailment. The district judge had charged the jury that, where a derailment occurs, an inference of negligence arises in the absence of any evidence or any explanation of the derailment; but, by reiterated statements, the trial judge emphasized that the burden rested upon the plaintiff to prove that the accident was occasioned by the negligence of the railroad company in the maintenance of its roadbed and equipment. The jury were instructed that, if it was found that the derailment was probably caused by a piece of plank

which the train had torn from a crossing, they were to consider whether the evidence disclosed a lack of due care upon the part of the railroad company in respect to the crossing, or in respect to its roadbed or equipment.

The jurist, writing for this court, on appeal pointed out that nowhere was the jury charged as to the true effect of the res ipsa loquitur doctrine, or that they would be justified in inferring negligence from the mere fact that the plank had been picked up by the train. It was considered misleading to charge the jury that the plaintiff must prove a particular negligence causing his injury, unaided by the evidential inference in a case where the doctrine is applicable. It was repeated that res ipsa loquitur applies to cases between master and servant, as well as to those not in such relationship.

Atlantic Coast Line R. R. Co. v. Temple, 285 U.S. 143, 52 S.Ct. 334, 76 L.Ed. 670, cited by appellant, was distinguished in the Lowery case, supra, for the same reasons that it is distinguishable here.

See, also, Chesapeake & Ohio Ry. Co. v. Smith, 6 Cir., 42 F.2d 111; Baltimore & O. R. R. Co. v. Kast, 6 Cir., 299 F. 419; Byers v. Carnegie Steel Co., 6 Cir., 159 F. 347, 16 L.R.A.,N.S., 214; Cincinnati, N. O. & T. P. Ry. Co. v. South Fork Coal Co., 6 Cir., 139 F. 528, 534, 537, 1 L.R.A.,N.S., 533.

The charge of the district court in the instant case did not extend the res ipsa loquitur doctrine beyond its delimitations, as fixed by the authorities to which reference has been made.

After charging the jury correctly that the plaintiff carried the burden of proving by a preponderance of the evidence that the derailment resulted proximately from the negligence of the defendant railroad company, the district court thus emphasized, by repetition, the burden of proof which rested upon the plaintiff: "In a case of this kind, before you can predicate liability against a defendant for an act of negligence, the plaintiff must show by a preponderance of the evidence that the act of negligence was the proximate cause of the accident, or the derailment in this case, and resulting injury to the plaintiff, and by the proximate cause is meant that act or failure to act which directly and immediately and efficiently brings about the collision, or in this case the derailment, and the resulting injury."

Then, explaining to the jury that res ipsa loquitur translates into the "thing speaks for itself," the court charged them that where the instrumentality causing an injury is under the exclusive control of a defendant and is such an instrumentality as does not ordinarily involve injury, if those handling it exercise reasonable and ordinary care, the jury may infer from the happening of an accident, or specifically a derailment, that "the happening was due to negligence"; and that the jury could draw such inference—if fairly to be drawn—from all the facts and circumstances surrounding the derailment.

The court further instructed the jury that the allowable inference under the doctrine of res ipsa loquitur is rebuttable; and that it is permissible for evidence to be offered by the railroad company to show the degree of care which it actually used; whereupon, the question was for the jury to decide whether a preponderance of evidence, under all the proof, showed that the defendant exercised reasonable and ordinary care which had been previously explained to be due the plaintiff.

Moreover, at the request of appellant, the district judge gave the jury the following instructions: "The defendant was not obliged to explain how the derailment happened, and there is no presumption of negligence which the defendant had to overcome by proof. And you are not permitted to speculate or conjecture as to the cause of the derailment.

"The defendant was not obliged to explain or show the cause of the derailment, but only to go forward with proof that it had exercised due care to furnish safe equipment and operate the trains with due care over a properly maintained roadbed at the time and place."

■ Neither in the paragraphs which have been quoted and analyzed, nor elsewhere in the charge of the district court, do we find any erroneous instruction as to the applicability or scope of the res ipsa loquitur doctrine of which appellant may justly complain.

■ (3) The case was properly submitted to the jury within the rule of Pennsylvania R. R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819; Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; and kindred cases. The evidence offered by appellant concededly failed to explain the cause of the

derailment, other than to attribute it to "pure accident." The entire evidence, considered in the light most favorable to the plaintiff, was not of a character to forestall a jury verdict derived from the principle that the proven facts surrounding the derailment furnished circumstantial evidence of negligence upon the part of appellant. The testimony of the fireman on the engine which pulled the derailed caboose was alone sufficient substantial evidence to warrant submission of the case to the jury.

(4) Appellant insists that the following paragraph of the charge was prejudicially erroneous: "The court instructs the jury that if it is developed from the testimony, or from the witnesses who have within their knowledge material and pertinent facts concerning the matter under investigation who are under the control of or are available to a party to the suit, and that party fails to call them without reasonable explanation of his failure to do so, the jury will be warranted in inferring that their testimony, or the testimony of such witness or witnesses would be unfavorable to the party failing to call the witness or the witnesses."

It seems unnecessary to cite authority to support the correctness of this statement as a matter of abstract law. The verity of the principle pronounced by the district court has been long recognized.

But the argument is made that, in the factual setting, the instruction was prejudicial to appellant, for the reason that, under it, the jury were compelled to reach the erroneous conclusion that employees of the railroad company, not called as witnesses, were under the exclusive control of appellant. It is contended that the jury were impressed by the instruction with the erroneous notion that it was the duty of the defendant to introduce the employees as witnesses; and that, from its failure to introduce them, the jury could infer that had they been introduced their testimony would have been unfavorable to the appellant, and that such inference could be accepted as equivalent to substantive proof.

It is urged that the instruction was one-sided, in that the jury would not apply it as referring to the plaintiff, inasmuch as he was the only witness—except doctors—in his own behalf, while the defendant introduced the witnesses best qualified to testify concerning the matters under investigation; that the members of the section

crew not introduced as witnesses were equally as available to the plaintiff as to the defendant; that the Federal Employers' Liability Act, Title 45, Section 60, U.S.C.A. (53 Stat. 1404), forbids a railroad carrier, under severe penalty, from either preventing or attempting to prevent its employees from furnishing voluntarily information to an interested person, as to the facts incident to the injury or death of an employee; and that, therefore, the employees of a carrier are not under its control with respect to litigation. From all of this, the insistence is made that the instruction conveyed an erroneous, prejudicial implication.

A correct statement of law made by a district judge to a jury, though deemed by a reviewing court inapplicable to the situation confronted, would seldom justify reversal. In our judgment, the expression of which complaint is made, in the case at bar, fell within the broad province of discretionary choice vested in trial judges in United States Courts, but we think the instruction would be well omitted upon re-trial of the case.

(5) Notwithstanding the fact that appellee worked regularly at his job for about nine weeks following the accident, before consulting a physician, he obtained a verdict for $25,000 damages. The only testimony introduced by the appellee as to his injuries was given by the injured man, himself; and by two doctors. In aggregate, this testimony was to the effect that, as a result of the accident, the appellee had received totally and permanently disabling injuries, unfitting him for manual labor; that he had sustained a chipped fracture of the acetabulum of the right hip, a progressive traumatic arthritis of the right sacroiliac and hip joints, with impaction of the sacroiliac joint, produced by an aggravation and activation of a pre-existing, dormant and painless condition of arthritis which caused that condition to become painful and disabling.

The opinions of appellee's medical witnesses were sharply contradicted by those of four doctors offered as witnesses by appellant. Their testimony sum-totaled that the appellee was not suffering from traumatic arthritis and that there was no impaction of the sacroiliac joint, or fracture of the ascetabulum of the right hip. One of appellant's medical witnesses—its chief surgeon—was a specialist in traumatic surgery, who had examined and treated appel-

lee; and three were medical men who specialized in X-ray examination, diagnosis and treatment. The interpretation by these three expert Roentgeneologists of the X-ray pictures introduced by both appellant and appellee disclosed, in their opinion, no impaction or fracture, but revealed an abnormal congenital condition of the sacroiliac joint on appellee's right side and a further congenital abnormality, in that he was deficient in complete lumbar vertebrae.

Dr. Henry G. Hill of Memphis, specialist in orthopedic surgery who frequently testifies as an expert, was the chief medical witness for appellee. Dr. Hill, at the instance of appellee's attorneys, first examined the injured man, who lives in Nashville, Tennessee, about sixteen months after the accident and thirty days before the trial. From the entire setting, it is obvious that the purpose of appellee in going to Dr. Hill was to procure him as an expert witness; although the appellee was, after the examination, treated by Dr. Hill and kept in bed for two weeks.

Careful reading of the record reveals that the opinion testimony of Dr. Hill was based in part upon case history related by appellee and subjective symptoms described by him, and upon appellee's narrative of "what other doctors found in their examinations"; and upon the physical motion and actions of appellee during the physical examination.

Appellant moved to exclude the testimony of Dr. Hill, upon the ground that he arrived at his conclusion through consideration of these matters in connection with his physical examination of appellee. The motion to exclude was overruled, and exception was duly noted.

■ This court has previously declared that statements made to a physician to qualify him to testify as an expert witness are inadmissible in evidence. See Third Nat. Bank & Trust Co. v. United States, 6 Cir., 53 F.2d 599, 602; Hardy-Burlingham Mining Co. v. Baker, 6 Cir., 10 F.2d 277, 281. Cf. Baltimore & O. R. Co. v. Mangus, 6 Cir., 294 F. 761, 762.

The rule of evidence is directly applicable here. The scope of the testimony of Dr. Hill extended far beyond permissible limits. His testimony should have been restricted to a report of his physical examination of appellee and his opinion based on his findings from such examination, and to the answering of competent hypothetical questions propounded to him as an expert.

Upon the predicate that a motion to strike evidence must be specific and point out the exact testimony or evidence which the moving party seeks to have stricken (Ford Hydro-Electric Co. v. Neely, 7 Cir., 13 F.2d 361, 362; Puget Sound Power & Light Co. v. City of Puyallup, 9 Cir., 51 F.2d 688, 696), appellee urges that the motion of appellant to exclude the entire testimony of Dr. Hill is defective, inasmuch as portions of his testimony were competent. Elliott v. Peirsol, 1 Pet. 328, 26 U.S. 328, 338, 7 L.Ed. 164; Hill v. Wabash R. R. Co., 8 Cir., 1 F.2d 626, 631.

■ In our judgment, the point is not well taken. The motion was specific in stating the objections leveled against the testimony of Dr. Hill. When urging the exclusion of the testimony, the attorney for appellant stated: " * * * His testimony conclusively shows that in arriving at his conclusions in reference to the physical examination he took into consideration, and relied upon, the statements made to him by the plaintiff at the time in reference to how he fell from the cupola of the caboose; what part of his body struck a table, and just how he received his injury. And also his statements made by the plaintiff to him in reference to how he had suffered, and the extent to which he has suffered pain and injury from day to day, and from time to time since July 14th, 1939. And also upon the ground that the evidence of Dr. Hill shows that in arriving at his conclusion he took into consideration examinations made by other doctors at other times, and what the plaintiff told him about what other doctors found, and what other doctors said in reference to his condition, upon the ground that such testimony is self serving and hearsay, and under all of the decisions I know anything about, such testimony that is based upon the patient's own description of how he suffered pain and how he was injured, and so forth, and what other doctors said, and so forth, in connection with their examination is self serving and incompetent."

■ The opinions of Dr. Hill were so obviously based on the intertwining of his physical observation of appellee by scientific methods with the subjective statements of the appellee and the case history revealed by him to the doctor as to render his conclusions incompetent. In a scientific field, it is most important that opinion testimony be carefully received within ap-

propriate limits, lest lay judges and jurors be led to erroneous conclusions of fact.

The ruling of the district court upon the motion to exclude the testimony of Dr. Hill constituted reversible error. Like error was committed in the district court's ruling on a similar motion with respect to the testimony of Dr. Sam P. Ross, the other medical witness introduced by appellee. Inasmuch as the case must be retried, it is not necessary to discuss in detail the testimony of Dr. Ross; except to say that the doctor stated that he first saw appellee a year after the accident; that he did not actually treat the appellee as his patient but merely acted in an advisory capacity; and that his testimony was based in part on the case history related to him by appellee and on what the appellee stated concerning his visits to other doctors and what they had prescribed.

The judgment of the district court is reversed, and the case is remanded for a new trial.