Cas L. CORDLE, Plaintiff-Appellee,

v.

ALLIED CHEMICAL CORPORATION, Defendant-Appellant.

No. 14715.

United States Court of Appeals
Sixth Circuit.

Nov. 16, 1962.

As Amended Nov. 17, 1962.

H. R. Wilhoit, Wilhoit & Wilhoit, Grayson, Ky., for appellant.

Diedrich & Hermansdorfer, by H. David Hermansdorfer, Ashland, Ky., on the brief, for appellee.

Before CECIL, Chief Judge, McALLISTER, Circuit Judge, and LEVIN, District Judge.

CECIL, Chief Judge.

Cas L. Cordle, a seaman and plaintiff-appellee, hereinafter called plaintiff, brought an action under the Jones Act, in the United States District Court for the Eastern District of Kentucky, against Allied Chemical Corporation, defendant-appellant, hereinafter called defendant,

to recover damages for injuries alleged to have been caused by its negligence.

The defendant has a plant on the Ohio River, at Ashland, Kentucky, where it makes coke. It transports coal from its mines in West Virginia to the Ashland plant in barges propelled by motor vessels, one of which is called "Solvay." The plaintiff at the time in question was employed by the defendant as a watchman or second mate on the Solvay, in charge of deckhands.

On the night of November 7, 1957, at about 9:30 p. m., while he was walking along the gunwale of one of the loaded barges, the plaintiff claimed that he fell into an open hatch and sustained the injuries of which he now complains.

The issues presented by the complaint are negligence of the defendant, negligence of the plaintiff and the extent of his injuries.

The case was tried to a jury and resulted in a verdict and judgment in favor of the plaintiff, in the amount of $62,500. This appeal followed.

One of the assignments of error is that the trial judge erred in not directing a verdict in favor of the defendant, at the close of plaintiff's evidence. This presents a question of whether there is any evidence of negligence on the part of the defendant. No claim is made of the unseaworthiness of the vessel or the barges.

■ Counsel for the defendant concedes that, for the purpose of this appeal, the Court must accept as true the plaintiff's claim that he fell into an open hatch. The evidence shows that sometime before the plaintiff is alleged to have fallen, a hatch on one of the barges was opened for the purpose of pumping water from the hold. This hatch is not identified with the one in which plaintiff fell. Deckhand Don Lester says he closed it when the pump was taken out.

■ These facts were before the jury: The plaintiff fell into an open hatch; it was not being used at the time; one had been opened a short time before for the purpose of pumping water and it was the rule of the ship that all hatches must be closed when not in use. We do not think it was incumbent on the plaintiff to eliminate all possibility that some one other than a ship's employee opened the hatch.

Counsel for the defendant argues that the defendant was not negligent for the reason that the plaintiff himself committed a breach of duty in that he failed to exercise care to execute the standing order of the ship to close all hatches when not in use. This was a duty imposed on all employees of the ship. Counsel confuses this with plaintiff's duty, as testified to by Mr. Doss, superintendent of river transportation. He testified that it was the duty of the plaintiff, as watchman, to check the water content of the barges, hourly, when they are loaded and in tow. This is done by raising the hatch and shining a light in the hold. There was no breach of duty in this respect. We find no evidence in the record, as shown by the appendix, to the effect that the watchman had a duty to go around and see that the other employees closed the hatches. Obviously, if he found one open, it would be his duty to close it. When the hatch, into which the plaintiff fell, was left open, it was evidence that someone had breached a duty.

■ We conclude that there was sufficient evidence of negligence to present a jury question and that the trial judge properly instructed the jury on this issue.

■ The test of negligence for a jury trial, under the Federal Employers' Liability Act (Section 51, Title 45 U.S.C.), is applicable to a jury trial under the Jones Act (Section 688, Title 46 U.S.C.). In Rogers v. Missouri Pacific Ry. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed. 2d 493, the Court said: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes,

including the employee's contributory negligence." For application of the Federal Employers' Liability Act to Jones Act cases, see, Kernan, Adm. v. American Dredging Co., 355 U.S. 426, 439, 78 S.Ct. 394, 2 L.Ed.2d 382.

■ Since contributory negligence cannot be an absolute defense in a Jones Act case, this issue must be submitted to the jury.

A directed verdict was properly denied.

■ One assignment of error was directed at the Court's instructions to the jury. The objection is made to instructions that were given, as well as to the failure to give some that were requested by counsel for the defendant.

We find no merit to this claim. The Court adequately instructed the jury as follows: "Now, you are further instructed that an open hatch is not of itself negligence and the defendant through its agents, servants and employees had a right to open the hatch and leave it open for the purposes of its use in the operation of the barge. However, if you believe that ordinary care, under the conditions outlined in the evidence, required the hatch at that time to be closed and the defendant, its agents, servants and employees, failed to exercise such care and left the hatch open, if you believe it was open, and the plaintiff was injured by such failure to close the hatch, you should find for the plaintiff."

Tomlinson Fleet Corporation v. Herbst, 268 F.2d 642, C.A.6, involves a foreign and slippery substance on a ladder or stairway and is not in point here.

■ One of the assignments of error relates to the admission of testimony. Don Lester, one of the deckhands, testified that on the morning after the accident Captain Sherman asked him why he left the hatch cover open. Lester told him that he didn't think he did leave it open and the Captain said: "Cas fell in the hatch." Counsel for the plaintiff attempt to justify this on the basis of impeachment of the credibility of the Captain's testimony that Cas did not notify him of the accident the night it

happened. We find nothing in this statement, nor in the testimony printed in the appendix, that is inconsistent with the Captain's testimony that he did not hear about the accident until morning. This testimony tends to prove nothing and is incompetent. The undisputed testimony is that the hatch was open and that Cas fell in it. We are of the opinion that the defendant was not prejudiced by the admission of this testimony and that its substantial rights were not affected (Rule 61 F.R.C.P.).

Another of the assignments of error relates to the testimony of Dr. E. W. Garred, who was called on behalf of the plaintiff. It is claimed that he was consulted purely for the purpose of securing him as a medical witness and that he was permitted to testify to the history and subjective symptoms given him by the plaintiff and to give an opinion based, in part, on such history and subjective symptoms.

Dr. Garred is a general surgeon and he saw the plaintiff, by appointment, with his attorneys, on November 29, 1960, about two months before the trial. The doctor saw the plaintiff subsequent to this and prescribed some treatment for him. There is a conflict as to whether he was consulted solely for the purpose of becoming a medical witness. Three other physicians, all orthopedic surgeons, testified. Dr. Arthur S. Jones, on behalf of the plaintiff, and Drs. Francis A. Scott and Thomas Rothrock Miller, on behalf of the defendant.

Dr. Jones examined the plaintiff in August 1958, November 23, 1960 and February 8, 1961. Each time the plaintiff was referred to Dr. Jones by his attorneys. The doctor did not treat the plaintiff or prescribe for him on any of these occasions. He gave the history and subjective symptoms, as related to him by the plaintiff, as well as his physical findings. The doctor testified that on his last examination his findings were the same as before, except further advanced.

Dr. Jones testified that the operation was well done and that good results were obtained from the fusion of the fifth ver-

tebra and the first sacral segment, but they did not go far enough. It was his opinion that you have to fix the whole spine in order to get rid of the pain and that his trouble was coming from a metabolic change and not a disc.

Dr. Scott first saw the plaintiff on August 1, 1958. The diagnosis was a mild disc herniation or ruptured disc, at the fifth lumbar vertebra. A body cast was applied to immobilize the lower spine. Dr. Scott saw the plaintiff on August 8th and September 3rd. On September 13th he operated and removed a large protruding ruptured disc, between the fifth lumbar and the first sacral vertebra. A spinal fusion of the joint was effected. The doctor saw the plaintiff periodically and successively until June 7, 1960. He testified to the history and subjective symptoms, as given to him by the plaintiff. Specifically, the doctor said that on January 29, 1960, "His major complaint, aching of the back after long periods on his feet or after heavy lifting" and on June 7, 1960, "again complaining of aching in the back particularly after long periods of standing or long periods of pulling on heavy lines at work."

Dr. Thomas Rothrock Miller testified that he had examined the plaintiff on January 24, 1961, at request of his counsel. He testified as to history and symptoms given him by the plaintiff.

The plaintiff himself testified to an impairment of his physical condition and symptoms that were as bad or worse than those testified to by the doctors.

The principal variation between the testimony of Dr. Garred and the other doctors is that there was not a solid fusion at the point of the operation. This conclusion was based on his interpretation of the x-ray films and not the symptoms related to him by the plaintiff. His conclusion from all the facts before him was that there was total and permanent disability, whereas the other doctors found only partial permanent disability.

Assuming that Dr. Garred was consulted for the sole purpose of giving medical testimony, which is in conflict, there is ample testimony in the record of the plaintiff's history and symptoms, other than as stated by Dr. Garred. An error in the admission of evidence may be cured by the subsequent use of similar evidence by the opposite party. Wigmore on Evidence, 3rd Ed. 344, 345, Sec. 18(D). We find no prejudicial error as a result of his testimony (Rule 61 F.R. C.P.).

A trial judge shall apply a rule of evidence, including that which is applied in the courts of general jurisdiction of the state in which the United States Court is held, which is most favorable to the reception of the evidence. Rule 43(a) F. R.C.P.

In Mary Helen Coal Corp. v. Bigelow et al., Ky., 265 S.W.2d 69, 70, it was stated: "The correct rule, consistently applied in these and other cases, is that a physician whose examination is made for a purpose other than treatment may express an opinion as to the patient's physical condition and degree of disability although the opinion is based upon subjective symptoms alone, but he may not relate statements or voluntary acts of the patient as a means of bolstering his testimony. If the physician is consulted for the purpose of prescribing treatment, he may relate the statements and voluntary acts of the patient as well as express an opinion based upon such statements and acts."

Under this rule it was proper for Dr. Garred to consider the subjective symptoms in formulating and expressing his opinion. As we have indicated there was ample evidence of the symptoms other than as stated by Dr. Garred. We think the Kentucky rule is controlling over the federal rule announced in Nashville, C. & St. L. Ry. Co. v. York, 127 F.2d 606, 611, C.A. 6, and that that case can be distinguished on the facts from the case at bar.

Dr. Garred's testimony was taken and submitted at the trial on deposition. The objections now directed at the doctor's testimony were not made at the time of taking the deposition. Objec-

tions to the competency of a witness and to the competency, relevancy and materiality of testimony taken on deposition, are waived if not made before or during the taking of the deposition, if the ground of the objection is one which might have been corrected if made at that time. Rule 32(c)(1)(2). Thompson v. Thompson, 82 U.S.App.D.C. 325, 164 F.2d 705, 706; Batelli v. Kagan & Gaines Co., Inc., 236 F.2d 167, 170, C.A. 9. We think these objections fall in that category. The doctor could have been instructed not to state the history and symptoms as given him by the plaintiff and hypothetical questions could have been framed, based on the history and symptoms of the plaintiff, as his counsel must certainly have known them at that time.

 If the objection to the doctor's qualification is directed at his being a general surgeon, rather than an orthopedic surgeon, it is not well taken. As a general surgeon, he could qualify as an expert to give the testimony which he gave. Any question would go to the weight, not the competency of the testimony. If the objection was that his qualifications were not given in the record, that could easily have been corrected.

We find no merit to this assignment of error.

Finally, the defendant claims that the verdict was excessive and should be set aside. It is argued that the plaintiff was guilty of contributory negligence and that such negligence contributed at least fifty percent to his injuries. As we have previously said, there was sufficient evidence of negligence to submit the case to the jury and likewise the question of contributory negligence was for the jury. We will not disturb the jury's findings on these issues. The trial judge considered, at length, the question of the amount of the verdict. This is primarily a question for him and we find that his reasoning justifies his conclusion that the verdict should stand. Montgomery Ward & Co. v. Morris, 273 F.2d 452, 453, C.A. 6; Kroger Co. v. Rawlings, 251 F.2d 943, 945, C.A. 6; Tennessee Copper Co. v. Smith, 216 F.2d 428, C.A. 6; Werthan Bag Corp. v. Agnew, 202 F.2d 119, 122, C.A. 6; Cross et al. v. Thompson, 298 F. 2d 186, 187, C.A. 6; Collins v. Clayton and Lambert Mfg. Co., 299 F.2d 362, 365, C.A. 6.

The judgment of the District Court is affirmed.