Clifford **PADGETT**, Plaintiff-Appellee,

v.

**SOUTHERN RAILWAY COMPANY**,
Defendant-Appellant.

No. 18066.

United States Court of Appeals
Sixth Circuit.

June 13, 1968.

der the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., alleging that the injuries which he sustained were caused by the negligent failure of the railroad to furnish reasonably safe methods and conditions for work. The jury returned a verdict in favor of Padgett and assesed damages in the amount of $119,637.00.

On appeal the railroad complains of nine errors which it contends were committed at the trial. As to certain of the purported errors it is not argued that the specific error, standing alone, would be sufficiently prejudicial to warrant reversal. The railroad relies upon these asserted errors, taken together, to attain the reversal which it seeks.

## I.

First we consider the railroad's primary contention that the District Court erred in refusing to grant its motions for a directed verdict or judgment n.o.v.

Padgett testified that at about 12:30 on July 21, 1964, his foreman, W. E. Sommerville, told him that "there was a lumber car on the Fairground Spur, the chains were down, and * * * wanted to move the car about 2:30 and I would have to put the chains up." He further stated that upon being directed to put the chains up, he warned Sommerville "that the chains were all down on the car, the bands cut on the top bundle on the east side of it and they were still unloading the car and the lumber was all loose and it might fall off." Nevertheless, according to plaintiff's testimony, the foreman ordered him to "get the chains up, the lumber would not fall." A co-worker substantially corroborated plaintiff's testimony to the effect that Padgett informed Sommerville that lumber was being unloaded and that plaintiff thought he should not get the chains up until the unloading had been completed.

The type of car on which plaintiff was told to work was stacked with bundles of slick lumber, rising about fifteen feet above the ground. Each bundle of lumber was fastened with metal

James L. Garthright, Jr., Memphis, Tenn., for defendant-appellant; Laughlin, Watson, Garthright & Halle, Memphis, Tenn., of counsel.

William C. Lane, Kansas City, Mo., (Ernest Hubbell, William C. Lane, Marc W. Gile, Kansas City, Mo., Hal Gerber, Gerber, Gerber & Lewis, Memphis, Tenn., on the brief), for plaintiff-appellee.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

Clifford Padgett, plaintiff-appellee, was seriously injured while employed as a carman by the Southern Railway Company. Padgett brought this action un-

bands, and the bundles had been secured to the railroad car by chains. When plaintiff approached the car the lumber was being unloaded. All of the chains were on the ground and some of the bundles were unfastened. In order to permit the car to be moved, Padgett was to pick the chains off the ground and place them in containers beneath the car. He testified that he warned the individuals who were unloading the lumber that he would be picking up the chains. In doing his work, plaintiff did not touch the load of lumber in any way. While working with the fourth chain, Padgett was struck by six or seven pieces of lumber. Each board weighed sixty-two pounds. Following this accident he became totally and permanently disabled.

■■■ In determining whether there was proof of negligence, reviewing courts are controlled by the rule that the evidence must be viewed in the light most favorable to the party against whom the directed verdict is sought. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Miller v. Cincinnati, New Orleans, and Texas Pacific Railway Co., 317 F.2d 693, 700 (6th Cir.). When an action is brought under the Federal Employers' Liability Act, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * *." Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493.

■■■ One of the obligations imposed upon an employer by the Federal Employers' Liability Act is the duty to use reasonable care in furnishing his employees with a safe place to work. The reasonableness of the care exercised by the employer must be determined with a view toward the hazard involved in the place where the work is to be performed and the machinery which is being used. Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 63 S.Ct. 1062, 87 L.Ed. 1444.

■■ In Bridger v. Union Railway Co., (6th Cir.), 355 F.2d 382, 386, this Court said:

"The statute contemplates that the railroad furnish its employees with a reasonably safe place to work, but the rule does not contemplate absolute elimination of all dangers, but only the elimination of those dangers which could be removed by reasonable care on the part of the employer. Raudenbush v. B. & O. Railroad, 160 F.2d 363, (3rd Cir. 1947). The question is not whether the railroad has placed its employees in a locale which proved to be unsafe, but whether the railroad, by failing to exercise all reasonable care, participated in any manner to effect or permit the unsafe condition. Of course, 'reasonable foreseeability of harm is [also] an essential ingredient of Federal Employers' Liability Act negligence.' Gallick v. B. & O. Railroad Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963)."

■■■ Under Rogers v. Missouri Pacific R. Co., supra, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, in order to grant a peremptory verdict for the defendant railroad, there must be no evidence from which the jury could find that employer negligence played any part in injuring the plaintiff. In the present case, there was evidence from which the jury could reach the conclusion that the employer failed to exercise reasonable care in assigning plaintiff the task of picking up the chains while lumber was being unloaded from the car. There is evidence that the plaintiff would be exposed to the risk of loose, slick lumber falling because of the activity of the men unloading the car. There is also evidence that the employer had affirmative knowledge of this risk. While the picking up of chains attached to a railroad car was a normal work assignment, there is evidence in the record to the effect that plaintiff was the only employee ever required to perform this task at the same time that lumber was being unloaded.

As said in Dennis v. Denver & Rio Grande W. R. Co., 375 U.S. 208, 209, 84 S.Ct. 291, 292, 11 L.Ed.2d 256:

"There can be little dispute that these facts, if believed, establish negligence by respondent railroad, since they show that the foreman, who had full control over petitioner's activities while on this job, did not take all necessary and reasonable precautions to prevent injury to petitioner when put on notice of his condition. Lavender v. Kurn, 327 U.S. 645, [66 S.Ct. 740, 90 L.Ed. 916;] Boston & M. R. Co. v. Meech, [1 Cir.,] 156 F.2d 109, cert. denied, 329 U.S. 763, [67 S.Ct. 124, 91 L.Ed. 658]."

The railroad urges that the sole cause of plaintiff's injury was his imprudent choice of time for doing the work and his purported failure to warn the men who were unloading the lumber. It is sufficient to note that plaintiff introduced evidence contrary to these assertions by the railroad. As to the employee's own awkwardness or negligence in performing his work, this Court has said that "[e]ven though plaintiff's awkward method * * * was an important factor in the accident, and even if some minds might conclude that it was the sole factor," the jury may consider evidence that employer negligence played some part in producing the injury. Miller v. Cincinnati, New Orleans, and Texas Pacific Ry. Co., supra, 317 F.2d 693, 700.

That the defendant railroad has strongly controverted most of the material evidence introduced by the plaintiff does not preclude the jury from accepting plaintiff's evidence as a basis for finding negligence on the part of the employer. In Bailey v. Central Vermont Ry., supra, 319 U.S. 350, 353, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444, the Supreme Court said: "the debatable quality of [the issue of negligence], the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury."

We hold that the District Court did not err in declining to direct a verdict in favor of the railroad and in refusing to grant the motion for judgment n.o.v.

II.

In response to a hypothetical question, one medical expert testified that plaintiff's condition was "due to the accident sustained while at work for the Southern Railroad Company." The railroad insists that expert medical opinion as to the causation of a patient's physical condition is inadmissible in that it invades the fact-finding province of the jury. Under the railroad's view the medical expert's response should be limited to whether the accident might or could have caused the injury in question.

One of the bases of admissibility of evidence in the federal courts is that the evidence is admissible "under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held." Rule 43(a), Fed.R.Civ.P. When concerned with the admissibility of medical expert testimony on the cause of a physical condition, Tennessee courts follow the holding of National Life & Accident Ins. Co. v. Follett, 168 Tenn. 647, 80 S.W.2d 92. In that case the Tennessee Supreme Court held that where the lay mind is not so competent as that of the expert witness to form an opinion or reach a conclusion, expressions of opinion by a medical expert as to the causation of a medical condition are admissible even though the issue of causation is ultimately to be determined by the jury. As to the phraseology in which the medical expert responds to a hypothetical question, Chief Justice Green wrote:

"However the opinion be phrased or formulated, it remains an opinion, which the jury is at liberty to reject. To restrict the expert's expression, however, to the subjunctive mood in addition to detracting from the force of the opinion tends to confuse the jury in weighing the testimony of the witness. Such mode of expression

indicates that the witness lacks conviction when, as a matter of fact, he may be entirely convinced." 168 Tenn. at 659, 80 S.W.2d at 97.

The railroad company had attempted to interject the possibility that an automobile accident in 1958 was a factor contributing to Padgett's condition after the 1964 railroad accident. The jury was confronted with a situation in which the lay mind is not so competent as that of the medical expert to form an opinion or reach a conclusion as to the causation of the injury which is involved in this action.

■■■ Without specifying the particular evidence to which it objects, the defendant railroad next contends that the District Court erroneously admitted testimony by an examining physician which was based, in part, upon plaintiff's subjective symptoms. This Court has held that statements made to a physician to qualify him to testify as an expert witness are inadmissible in the expert's testimony. Nashville, C. & St. L. Ry. Co. v. York, 127 F.2d 606, 611 (6th Cir). This rule of evidence is based on the familiar hearsay doctrine and is designed, in practicality, to exclude the introduction of self-serving declarations of the patient under the guise of expert testimony. On the other hand, where a physician is called upon to treat a party professionally, the physician may testify as to his opinion of the patient's condition based upon subjective as well as objective symptoms. Hardy-Burlingham Mining Co. v. Baker, 10 F.2d 277, 281 (6th Cir.).

■■■ The record establishes that the plaintiff relied upon the advice of the expert witness in question as to whether to undergo certain types of treatment and examinations, such as the myelogram. Plaintiff's reliance upon the doctor for medical advice and services in an effort to effect a cure is sufficient to eliminate the danger of self-serving declarations made to a physician merely to qualify him as an expert for trial.

The railroad also points out that the plaintiff "had been referred to [the doctor, an orthopedic surgeon] for examination in February 1967, the month of the trial of this cause." While this assertion is true, it ignores uncontroverted testimony that the plaintiff had seen this doctor on August 10, 1965, December 4, 1965, and August 18, 1966, as well as twice during the month of February 1967.

Another factor which removes the physician's testimony from the limitations of the so-called examining physician rule is the absence of any significant subjectivity in the doctor's testimony. Most of this doctor's testimony on direct examination was concerned with interpretation of X-rays, description of electromyographic and nerve conduction tests, and explanation of anatomical models and diagrams.

### III.

■■■ In his closing argument counsel for the plaintiff urged the jury to evaluate plaintiff's pain and suffering, past and future, on the basis of four dollars per day. Defendant contends that the District Court erred in overruling its motion to withdraw from the jury's consideration this method of evaluating pain. The District Court did charge the jury: "You should not arrive at your verdict through any gambling or speculative process." This Court has considered the question of whether counsel should be permitted to suggest to the jury a per diem figure in estimating the amount to be awarded for pain and suffering. Pennsylvania Railroad Co. v. McKinley, 288 F.2d 262, 267 (6th Cir.). In that case the Court found it "unnecessary to announce a procedural blueprint to be followed in future trials." While the Court declined to adopt a mechanical rule as to the permissibility of counsel's arguing a per diem evaluation of pain and suffering, it did set out the guidelines for appellate review of such an argument:

"Control of the conduct of counsel so as to keep it within the limits of

legitimate advocacy is primarily the duty and responsibility of the trial judge. We will not find error in his discharge of such duty unless we are persuaded that what he did, or failed to do, in matters within his discretion resulted in a miscarriage of justice or deprived one of the parties litigant of a fair trial. Many of the cases which have dealt with the claimed impropriety of an argument such as was made in this case have held that whether to allow or forbid dealing with damages for pain and suffering in the manner employed by plaintiff's counsel here was a matter within the discretion of the trial judge. [Citations omitted.] In some of these cases, the appellate court said that a defendant such as the appellant here would be entitled, upon request, to have the trial judge give a cautionary instruction advising the jury that the per diem estimates and blackboard computations were not evidence nor exhibits, but were merely the argument of counsel. No such request was made by the defendant in this case." 288 F.2d at 267.

In the present case the defendant railroad sought to withdraw from the jury's consideration the argument of counsel as to per diem evaluation of pain. As in *McKinley*, the objecting party failed to request a cautionary instruction to the effect that per diem estimates were not evidence, but were merely arguments of counsel.

### IV.

■■■■■ The railroad further complains that the verdict of $119,637 is excessive. If it be assumed that the jury awarded the thirty-nine year old employee the present value of his past and anticipated future wages, it follows that Padgett was given slightly less than $22,000 for pain and suffering over the remaining twenty-nine years of his life expectancy. This Court has said many times that it is primarily for the trial judge to determine whether the jury verdict is excessive:

"In all events, the determination of whether a jury's verdict is excessive is resolved by the discretionary consideration of the trial judge. Southern Railway Co. v. Miller, 285 F.2d 202, 206, [85 A.L.R.2d 842] (CA6, 1960). Consumers Power Co. v. Nash, 164 F.2d 657, 660 (CA6, 1947); Cordle v. Allied Chemical Corp., 309 F.2d 821, 826 (CA6, 1962). Absent clear abuse of discretion, appellate courts will not make their own appraisals. Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 446 (CA8, 1961); Agnew v. Cox, 254 F.2d 263, 268 (CA8, 1958); National Alfalfa Dehydrating & Mill Co. v. Sorenson, 220 F.2d 858, 861 (CA8, 1955); Sebring Trucking v. White, 187 F.2d 486 (CA6, 1951)." Cutter v. Cincinnati Union Terminal Co., 361 F.2d 637, 639–640 (6th Cir.).

### V.

■■■■ The railroad contends that the District Court erred in charging, over the defendant's objection, that the defense of assumption of risk was unavailable in an action under the Federal Employers' Liability Act. The railroad asserts that there was no evidence which would warrant such an instruction. One of the theories of the railroad at trial was that the plaintiff voluntarily put himself in a position of peril with full knowledge of the risk. In Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 58, 63 S.Ct. 444, 87 L.Ed. 610, the Supreme Court noted " *   *   * the hazy margin between negligence and assumption of risk   *   *   *." It is arguable that the railroad attempted to show assumption of risk disguised as contributory negligence. In any event, as this Court has said: "A correct statement of law made by a district judge to a jury, though deemed by a reviewing court to be inapplicable to the situation confronted, would seldom justify reversal." Nashville, C. & St. L. Ry. Co. v. York, supra, 127 F.2d 606, 610 (6th Cir.).

All other charges of error relied upon by the railroad have been considered and are found to be without merit.

Affirmed.