15 F.3d 1087
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Christopher MITCHELL, Plaintiff-Appellee,
v.
F/V JANICE, Official Number 560264, her engines, tackle and
appurtenances; Ocean Warrior Inc., corporation, Defendants,
and
Warrior Fleet, Inc., a corporation, In rem and in personam,
Defendant-Appellant.
Christopher MITCHELL, Plaintiff-Appellant.
v.
F/V JANICE, Official Number 560264, her engines, tackle and
appurtenances; Ocean Warrior Inc., corporation, Defendants,
and
Warrior Fleet, Inc., a corporation, In rem and in personam,
Defendant-Appellee.
 Nos. 92-35497, 92-36582.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 16, 1993.*
Decided Jan. 4, 1994.
 
 Before: GOODWIN, CANBY and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This is an appeal by defendant-appellant Warrior Fleet, Inc. from the final judgment of the district court awarding to plaintiff-appellee Christopher Mitchell maintenance and cure, damages, and attorney's fees.
 
 
 3
 The district court made the following findings of fact upon which its judgment relies. Ocean Warrior, Inc., a Florida corporation, bareboat-chartered and operated the fishing vessel F/V Janice out of the port of Ilwaco, Washington during the 1989 shrimp fishing season. During this period, Warrior Fleet acted through its officer and agent James E. Gowdy.
 
 
 4
 Mitchell was rehired by James Gowdy to work on board the F/V Janice beginning June 25, 1989. During the next two days, Christopher Mitchell engaged in activities traditionally performed by crewmembers on board the F/V Janice. Mitchell was the only crewmember with the exception of the acting master, James Gowdy, who was on board the F/V Janice when Gowdy gave an instruction to Mitchell that the vessel be moved away from its location under the ice chute at Jessie's Ilwaco Fish Cannery on the late afternoon of June 26, 1989.
 
 
 5
 While working the mooring lines in order to move the vessel away from the dock, Mitchell fell nine feet through an open hatch into the ice hold of the F/V Janice, sustaining serious injuries to his back and shoulder. At the time of his fall, Mitchell had finished untying one mooring line and was attempting to circumnavigate the open hatch of the ice hold to untie a second mooring line.
 
 
 6
 The job of casting away mooring lines on board the F/V Janice was routinely assigned to two crewmembers. Testimony at trial established that it was not safe to operate the vessel with the large hatch cover removed from the hatch. Testimony further established that it was possible to perform all of the relevant tasks by removing only the small "manhole cover," which was cut into the large hatch cover and measured approximately three feet square.
 
 
 7
 Warrior Fleet appeals the district court's judgment on three grounds, and Christopher Mitchell cross-appeals, claiming that the damages awarded are inadequate as a matter of law.
 
 
 8
 I. The Unseaworthiness Claim.
 
 
 9
 This Court previously dismissed defendants Ocean Warrior, Inc. and the F/V Janice in rem from this action by order dated October 28, 1992. Accordingly, the first issue raised by Warrior Fleet--whether the district court erred in finding as a matter of law that the open hatch cover constituted unseaworthiness--is moot.
 
 
 10
 II. The Jones Act Claim.
 
 
 11
 Warrior Fleet next challenges the district court's finding that it is liable to Christopher Mitchell under the Jones Act, 46 U.S.C. Sec. 688, because it allowed the existence of unsafe conditions that proximately caused Mitchell's fall aboard the F/V Janice. Warrior Fleet argues that it did not act negligently and, in the alternative, that Christopher Mitchell was comparatively at fault.
 
 
 12
 Findings of fact, including an admiralty court's apportionment of fault, are subject to the clearly erroneous standard of review. Trinidad Corp. v. S.S. Keiyoh Maru, 845 F.2d 818, 822 (9th Cir.1988). Conclusions of law are, of course, reviewed de novo. Id.
 
 A. Negligence
 
 13
 Even the slightest negligence by an employer suffices for a finding of liability for injury to a seaman under the Jones Act. Trinidad Corp. v. S.S. Keiyoh Maru, 845 F.2d at 822. An employer's negligence need only be a contributing factor, not the primary cause of injury. Bennett v. Perini Corp., 510 F.2d 114 (1st Cir.1975).
 
 
 14
 Both Mitchell and Warrior Fleet cite a string of cases supporting their respective arguments that an open hatch does or does not constitute negligence on the part of the shipowner. In sum, both parties are right: an open hatch, without more, does not by itself constitute negligence. Davila v. S.S. Vercharmian, 247 F.Supp. 617 (E.D.Va.1965), aff'd, 372 F.2d 92 (4th Cir.1967) (open hatch, without more, does not constitute "an existing dangerous condition"). In Cordle v. Allied Chemical Corp., 309 F.2d 821, 824 (6th Cir.1962), the Sixth Circuit upheld jury instructions given by the district court in a case brought under the Jones Act by a seaman who, while walking along the gunwhale of a loaded barge, fell into an open hatch, sustaining serious injuries. The instructions, in part, were as follows:
 
 
 15
 [A]n open hatch is not of itself negligence and the defendant through its agents, servants, and employees had a right to open the hatch and leave it open for the purposes of its use in the operation of the barge. However, if you believe that ordinary care, under the conditions outlined in the evidence, required the hatch at the time to be closed and the defendant, its agents, servants and employees, failed to exercise such care and left the hatch open ... you should find for the plaintiff.
 
 
 16
 Id. Here, the district court's finding that Warrior Fleet was negligent in operating the F/V Janice is based on more than a mere open hatch.
 
 
 17
 Warrior Fleet relies heavily on Davila v. S.S. Vercharmian, supra, for its claim that Gowdy was not negligent in operating the F/V Janice with an open hatch. In Davila, the district court found that "there is certainly no duty to warn anyone approaching an open hatch which would be apparent to anyone through the medium of 'looking downward', which libelant admits he did not do." Id., 247 F.Supp. at 620. However, in Davila it was necessary to keep the hatch open, as seamen were removing lumber from the hatch at the time of the accident. Here, there was no reason for the ice hatch of the F/V Janice to be uncovered during the afternoon of June 26, 1993. The vessel was in the process of being moved. Furthermore, unlike Davila there was no evidence of "deliberate inattention" on the part of Mitchell. Id. Warrior Fleet, through its agent James Gowdy, was clearly negligent in suddenly and unexpectedly insisting on operating the vessel with a single, partially disabled crewmember. Cf. Comeaux v. T.L. James & Co., Inc., 666 F.2d 294, 299 (5th Cir.1982) (vessel held unseaworthy where it was operated by an insufficient crew).
 
 B. Contributory Negligence
 
 18
 Citing the district court's own findings of fact, Warrior Fleet argues that Mitchell was contributorily negligent in (1) removing the hatch cover and tying it against the pin rail on June 25, 1989; (2) drinking one and a portion of one alcoholic beverages during the afternoon of June 26, 1989; and (3) not choosing the wide passageway on the starboard side of the vessel while working the mooring lines that same day.
 
 
 19
 Although assumption of risk has been abolished as a defense to a seaman's claim under the Jones Act, "[c]ontributory negligence, applied on a comparative basis, can be used to reduce a shipowner's liability." McCoy v. United States, 689 F.2d 1196, 1197 (4th Cir.1982). The employer must show by a preponderance of the evidence that the seaman's contributory negligence was the proximate cause or a substantial factor in producing the injury. 1B Benedict on Admiralty Sec. 25 at 3-97 (7th ed. 1993).
 
 
 20
 Under the Jones Act, although a seaman has a duty to use reasonable care, he generally has no duty to find the safest way to perform his work. Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1355 (5th Cir.), cert. denied, 488 U.S. 968 (1988). "Rather, the duty to provide for a safe course of conduct lies primarily with the vessel owner." Id.
 
 
 21
 Warrior Fleet first argues that Mitchell was contributorily negligent in removing the hatch cover and tying it against the pin rail on June 25, 1989. Although testimony at trial established that the relevant work could be accomplished by removing only the small manhole cover over the ice hatch, and not the larger hatch cover, testimony also showed that it was common procedure on board the F/V Janice to remove the large hatch cover and tie it against the pin rail when loading ice onto and unloading shrimp from the vessel. There is no evidence in the record indicating that Gowdy instructed his crew to not remove the hatch cover or to stow it in a safer manner, or even that Gowdy warned his crew regarding the hazards of stowing the hatch cover in the manner that they had. Gowdy, not Mitchell, had the duty to insure that the hatch cover was stowed in the safest manner possible. Johnson v. Offshore Express, Inc., 845 F.2d supra, at 1355. Accordingly, Warrior Fleet's first claim is insufficient as a matter of law to establish contributory negligence on the part of Mitchell.
 
 
 22
 Second, Warrior Fleet contends that Mitchell was contributorily negligent in drinking one and a portion of one alcoholic beverages during the afternoon of June 26, 1989. The testimony at trial established that Mitchell was not intoxicated at the time of his fall.
 
 
 23
 Finally, Warrior Fleet argues that Mitchell was contributorily negligent in not choosing the wide passageway on the starboard side of the vessel while working the mooring lines immediately prior to his fall on June 26, 1989. The knowing choice of a more dangerous route by a seaman on board a vessel does not bar recovery as a matter of law, but can be considered only in mitigation of damages. Palermo v. Luckenbach S.S. Co., Inc., 355 U.S. 20 (1957). "In the performance of duty [the seaman] is often under the necessity of making quick decisions with little opportunity or capacity to appraise the relative safety of alternative courses of action." Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 431 (1939). In light of the facts that Mitchell had to act quickly in casting away the vessel, was provided by his captain with insufficient assistance in completing this task, and was confronted with an unusual mooring arrangement due to a missing stern line, we cannot say that the district court clearly erred in finding no contributory negligence on the part of the plaintiff.
 
 III. Failure to Admit Rebuttal Evidence
 
 24
 Warrior Fleet claims that the district court committed reversible error by refusing to admit rebuttal evidence offered by the defendant after the closing arguments. What Warrior Fleet claims to be rebuttal evidence, however, is merely a rehash of the same testimony offered by the same witness who testified during the presentation of Warrior Fleet's defense.
 
 
 25
 Evidentiary rulings are reviewed for abuse of discretion and will not be reversed absent some prejudice. McGonigle v. Combs, 968 F.2d 810, 818 n. 6 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992); Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 601 (9th Cir.1991) ("The district court has broad discretion in deciding what constitutes proper rebuttal evidence.") Even if the district court committed error in excluding certain evidence, in order to reverse "we must say that more probably than not, the error tainted the verdict." Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986).
 
 
 26
 The district court has discretion, pursuant to Federal Rule of Evidence 403, to exclude evidence "if its probative value is substantially outweighed ... by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In view of the repetitive nature of the rebuttal evidence offered by Warrior Fleet, we cannot say that the district court abused its discretion by excluding Runyon's testimony or that Warrior Fleet suffered any prejudice as a result.
 
 
 27
 IV. Adequacy of the Damages.
 
 
 28
 The measurement of pain and suffering in dollars is inescapably subjective, and "[i]t is not our function to second guess the triers of fact who heard the plaintiff himself speak of his suffering." Tanno v. S.S. President Madison, 830 F.2d 991, 993 (9th Cir.1987). In reviewing nonpecuniary damages therefore, we accord even greater deference to the district court's findings. We will not disturb an award of damages for pain and suffering unless it "either shocks the conscience or was motivated by the trial judge's passion or prejudice." Havens v. F/T Polar Mist, 996 F.2d 215, 219 (9th Cir.1993).
 
 
 29
 Here, the district court found that the injuries suffered by Mitchell caused him great personal pain and suffering and that he may need future surgery to correct his shoulder. The $10,000 awarded for pain and suffering, though on the low side, is not "so grossly and palpably inadequate as to shock the court's conscience." Korek v. United States, 734 F.2d 923, 929 (2d Cir.1984). We reach this conclusion in light of the total amount of damages awarded to Mitchell and the district court's careful treatment of the entire damage issue.
 
 
 30
 Mitchell further argues that the district court erred in awarding him lost future wages which were insufficient based upon the evidence presented. Even though determining damages for lost future wages is a more objective task than ascertaining nonpecuniary damages, we still may not overturn the district court's determination of damages unless we find that it was clearly erroneous. Johnson v. United States, 704 F.2d 1431, 1441 (9th Cir.1983). The district court found that a crewmember on board a shrimp fishing vessel typically earns 10% of the vessel catch after deductions for fuel, ice and groceries, and that Mitchell's adjusted gross income for the 1988 fishing season was $7,715.00. In light of the evidence presented regarding Mitchell's past wages and his ability to perform work both at the time of trial and once he reached maximum medical cure, we cannot say that the district court clearly erred in its determination of damages.
 
 
 31
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3